Ernest MAXWELL, Jr. *v.* STATE of Arkansas

CR 83-10                                        652 S.W.2d 31

Supreme Court of Arkansas
Opinion delivered June 13, 1983

*Mobley & Smith,* by: *William F. Smith,* for appellant.

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant, Ernest Maxwell, Jr., was charged with first-degree murder in the death of Carol Conn, was found guilty in a two-stage trial, and was sentenced as an habitual offender to life imprisonment. We find it necessary to order a new trial, because the

prosecuting attorney brought inadmissible and prejudicial matter to the jury's attention and because the expert witness Monroe was permitted to state an inadmissible opinion.

On the morning of June 25, 1981, the badly battered body of Carol Conn, 20, clothed in a T-shirt, blue jeans, and tennis shoes, was found near the Plumerville exit from Interstate 40, in Conway County. The clothed body was taken to the state medical examiner for an autopsy. That afternoon the police questioned Maxwell, 43, with whom Carol had been living for about four weeks in his home near Atkins, in Pope County. Maxwell said then, and testified at the trial, that he last saw Carol at his home at about five o'clock the preceding evening. He went to sleep then. When he awoke at about eight, Carol was gone. He went into Atkins at about eleven to ask his brother if he had seen Carol; the next morning he asked about her elsewhere. He told the officers that during the four weeks he and Carol had been living together he had hit her only once, about two weeks earlier and with his open hand.

The state medical examiner, Dr. Malak, performed the autopsy, which at his request was witnessed by Berwin Monroe, a state police officer having extensive training and experience in criminal investigation. Dr. Malak testified, with the support of photographs he had taken, that Carol's body was bruised from head to foot, front and back. Some of the bruises had been inflicted about ten days before her death, others about three days before death, and others still later. Her skull had been fractured, but the actual cause of death was a heavy blow to the area of the umbilicus (navel), which burst her intestines and caused her death from internal bleeding within not more than ten minutes. Dr. Malak was of the opinion that Carol had been nude when she was killed; some recent wounds had bled, but there was no blood on her clothing, which must have been put on her body after death. The sufficiency of the evidence is not questioned.

Near the end of the trial, Maxwell took the witness stand and admitted on direct examination that he had been convicted of rape and that he had also been convicted of

having escaped from jail and having stolen a car during the escape. The prosecuting attorney began his cross-examination with this question:

> Mr. Streett: Q. Mr. Maxwell, I believe you acknowledged to Mr. Mobley [defense counsel] that in 1968 you pled guilty and were convicted of the raping of an eleven-year-old girl, and received a thirty-year — [Mr. Mobley interrupts with his objection.]

After a brief colloquy not heard by the jury the court denied a defense motion for a mistrial but admonished the jury not to consider Mr. Streett's reference to the girl's age.

We cannot say that in the circumstances the admonition cured the possibility of prejudice. The prosecutor's action must have been deliberate, for he could not reasonably have believed that Maxwell had admitted the inadmissible and prejudicial fact that he had raped an eleven-year-old child. In fact, the prosecutor did not argue during the colloquy that the question was proper, nor does the State make such a contention in its brief. We liken the situation to that in *Clark* v. *State*, 244 Ark. 772, 427 S.W.2d 172 (1968), where the prosecutor in the jury's presence went through the pretense of attempting to call the defendant's wife as a witness, knowing that she could not testify against him. We reversed the conviction because, while the crime was described as heinous and revolting, the offer to call the wife "exceeded the bounds of fairness, so essential to an unprejudiced trial." We cannot establish a precedent that a deliberately unfair tactic such as the one before us can be made harmless by anything less than a reprimand in the presence of the jury or by the granting of a mistrial.

There is another error that must be avoided upon a retrial. Berwin Monroe qualified as an expert witness in crime scene investigation and in the scientific examination of minute physical evidence. The State's theory was that Maxwell killed Carol in his home, that she was nude at the time of her death, and that Maxwell later put the clothing on her body, disposed of the body at the Plumerville exit, and cleaned up the room with a wet string-type mop.

Monroe gave convincing testimony about the many particles of steel wool, blue paint, orange-red paint, fish-like scales, flakes of glitter, sand, insect-egg material, and other microscopic matter that he found on the surface of Carol's body, on the *inside* of the clothing on the body, on the soles of the tennis shoes on the body, on her feet, and on exhibits recovered from the house: the mop, two pillow cases, and a pair of cut-off jeans that had belonged to Carol. Monroe was properly permitted to explain to the jury why the presence of the particles on the bottom of Carol's feet and on the soles of the tennis showes showed that she could not have walked out of the house, either barefooted or wearing the tennis shoes, and have walked for even a slight distance on grass, concrete, or asphalt without disturbing the particles on her feet and on the shoes. No complaint is made about that testimony.

The court, however, also permitted Monroe to testify that in his opinion Carol had met her death in the Maxwell house. Neither he nor Dr. Malak was able to say just what instrument if any was used in the murder. We can find in Monroe's testimony no scientific basis beyond the comprehension of the jury for his opinion that her death occurred in the house. His conclusion seems to have been based solely on the proof that she did not walk out on her own feet and that she died within ten minutes. Under Uniform Evidence Rule 702, Ark. Stat. Ann. § 28-1001 (Repl. 1979), the drawing of such a simple inference should not have been presented to the jury gift-wrapped with the fabric of expert scientific opinion. As the Advisory Committee's Note to Rule 702 puts the matter:

Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, Expert Testimony, 5 Vand. L. Rev. 414, 418 (1952).

There is no merit in the appellant's third argument, that the prosecutor should not have been permitted to refer to Maxwell, in the closing argument, as a rapist, thief, and escapee. The exact words used were not reported, but the prosecutor did state, in answering defense counsel's request for a mistrial, that he had used the terms only in arguing Maxwell's credibility as compared to that of the police witnesses. In that context the argument was not improper.

Reversed and remanded for a new trial.

Adkisson, C.J., concurs.