Tom Glaze, Justice.
 

 We assume jurisdiction of this tort case pursuant to Ark. R. Sup. Ct. 1-2(g) in order to achieve a fair allocation of the appellate workload. Appellant J. E. Merit Constructors, Inc. (Merit) raises eight points for reversal of a jury award in the amount of $150,000.00 in favor of appellee Louise Cooper, who sued Merit, alleging L. K. Webb, an employee of Merit’s, negligently caused serious injuries to Cooper’s face and left jaw.
 

 Taking Merit’s points in the order presented, we first consider its argument that the trial court erred in denying Merit’s motion for directed verdict. Specifically, Merit submits that Cooper failed to present substantial evidence to show negligence or to prove mental anguish and future medical expenses. When reviewing a denial of a motion for directed verdict, we determine whether the jury verdict is supported by substantial evidence. Pettus v. McDonald, 343 Ark. 507, 36 S.W.2d 745 (2001). Moreover, we review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered, and when the evidence and inferences create a jury question, we determine the trial court properly denied the defendant’s motion for directed verdict. See Ouachita Wilderness Institute v. Mergen, 329 Ark. 405, 947 S.W.2d 780 (1997).
 

 Affirmed.
 

 The crux of Merit’s first argument is that Cooper’s negligence case, at best, was built on speculation rather than substantial evidence. In reviewing the evidence in Cooper’s favor, as we must, we reject Merit’s argument. Cooper’s case in chief showed that, on July 20, 1994, she was driving her car north on Highway 79 past Albermarle’s plant. Her son Doug Cooper was a passenger. As they passed the plant, they saw a man operating a bush hog tractor mowing the plant’s property alongside the highway. Doug saw the operator drive the tractor into a ditch, causing gravel and rocks to be thrown out from underneath the bush hog, and as a result, a rock flew through Cooper’s open window, striking Cooper’s left jaw. Doug was required to take control of his mother’s car, and after stopping it, he got out to examine the bush hog. He saw the bush hog had no deflector shield or guard on it, and he brought this fact to the attention of the operator, who identified himself as L. K. Webb, an employee of Merit. The Merit company maintained the plant property for Albermarle. After the incident and Doug’s talk with Webb, Webb looked at Cooper’s face and acknowledged her face was swollen. Doug then took his mother to the Magnolia Hospital Emergency Room where Cooper was treated and released the same day. After Cooper returned home that day, Joe Millett, a supervisor at Merit, visited Cooper and confirmed that Webb was an employee of Merit, and was mowing grass at the time of the incident. Cooper also permitted Millett to take possession of the rock that had hit her and was still in Cooper’s car. When Cooper’s case finally went to trial, she not only presented the foregoing evidence, but also she introduced proof that to operate a bush hog without a protective shield, as Merit and its employee Webb were doing on July 20, was negligence.
 

 While Merit cross-examined Cooper and her witnesses and offered evidence to counter Cooper’s case, its version of the events is not controlling. However, as previously mentioned, the crux of Merit’s argument on appeal is that Cooper’s case bearing on negligence, at best, was built on speculation. To support its argument, Merit argues that Cooper’s claim was based on Webb’s operating a “yellow” bush hog at the time of the incident, but the proof showed Merit used Albermarle’s bush hog, which was “green” and had a protective shield.
 

 To establish a prima facie case in tort, a plaintiff must show that damages were sustained, that the defendant was negligent, and that such negligence was a proximate cause of the damages. Mergen, 329 Ark. at 412 (citing Southern Farm Bur. Cas. Ins. v. Allen, 326 Ark. 1023, 934 S.W.2d 527 (1996)). From the foregoing, it is clear that there was sufficient evidence of Cooper’s damages, Merit’s negligence, and the link between the two. Despite Merit’s placing of undue weight on the color of the bush hog, there was considerable evidence shown to the jury for it to believe Webb — Merit’s employee — was the one driving the bush hog that caused a rock to hit Cooper when she drove by. The resolution of factual issues, such as the color of the bush hog in this case, is a question for the jury, see, e. g., Smith v. Prudential Property & Cas. Ins., 340 Ark. 225, 10 S.W.3d 846 (2000), and this court will uphold a jury’s findings if there is any substantial evidence to support them. Callahan v. Clark, 321 Ark. 376, 901 S.W.2d 842 (1995).
 

 We next turn to Merit’s contention that Cooper’s evidence was insufficient to establish that Merit’s negligence caused Cooper’s mental anguish and medical expenses. We disagree. Cooper testified at length as to her pain and the “cryo-freeze” procedures she had to endure to gain relief from the pain. Dr. Robert Valentine, an anesthesiologist and pain management specialist, stated that Cooper suffered from “atypical trigeminal neuralgia,” which would be consistent with having sustained a blunt trauma. He further said that Cooper would require cryo-freeze procedures well into the future. Dr. David Redding, a neurosurgeon to whom Dr. Valentine referred Cooper, indicated that no surgical procedures could help her pain in the long run. Dr. Susan Samlaska, whom Cooper saw before going to Dr. Valentine, treated her with trigger point injections that only gave her partial relief. Presented with this substantial evidence, the jury concluded that Cooper had suffered mental anguish, and would continue to incur medical expenses in the future. Therefore, we conclude that the trial court did not err in denying Merit’s motion for directed verdict.
 

 Merit’s second point on appeal is that the trial court erred in excluding photographs it took of a green bush hog that it claimed was the one owned by Albermarle and was being used by Merit at the time of the accident. Merit had sought to introduce these photos into the record during a pretrial conference on May 4, 2000. At that time, Cooper’s counsel noted that Merit’s attorneys had first furnished photographs of a bush hog on April 3, 2000; prior to that time, based on earlier discovery responses, Merit had led Cooper to believe that nobody knew where the bush hog was located. Later responses by Merit indicated that it had known where the bush hog was for some time and had never told Cooper. Defense counsel got permission from Albermarle to photograph a bush hog in February of 2000. After Merit took the pictures of the bush hog, which had been sandblasted and painted in the years since the July 20, 1994, incident, Albermarle sold the machine at auction before Cooper could examine it. The trial court ruled that Merit could not introduce the photographs into evidence, but did allow Merit to display the photos to witnesses during the course of the trial.
 

 Questions regarding the admissibility of evidence are matters entirely within the trial court’s discretion, and such matters will not be reversed absent an abuse of that discretion. Berry v. State, 290 Ark. 223, 718 S.W.2d 447 (1986). The first question upon the introduction of photographs, as with all evidence, is whether they are relevant. Id.; see also Ryker v. Fisher, 291 Ark. 177, 722 S.W.2d 864 (1987) (the test of whether photographs are admissible into evidence depends on the fairness and correctness of the portrayal of the subject and their admissibility addresses itself to the sound discretion of the judge).
 

 Here, the photographs of the bush hog were taken over five years after the July 20 accident, and defense counsel conceded that the machine had been sandblasted and painted at some time during those years. Because the color of the bush hog was an issue at trial, yet there was no proof other than Millett’s testimony that it was the same bush hog, the “correctness of the portrayal of the subject” was called into question. The question of the admissibility of the photographs was squarely within the trial court’s discretion, and given the circumstances, we cannot say the court abused that discretion. Further, Merit was permitted to show the photographs to witnesses during their testimony; thus, we are unable to determine how Merit was prejudiced by the trial court’s ruling. We will not reverse in the absence of prejudice. Jackson v. Buchman, 338 Ark. 467, 996 S.W.2d 30 (1999).
 

 For its third point, Merit argues that the trial court erred by allowing the introduction of a videotape, which Dr. Valentine made, showing the cryo-freeze procedure undergone by Cooper. This procedure involved freezing some of the nerves in Cooper’s face in order to alleviate her pain. Merit contends that the tape was inadmissible “nonverbal hearsay.” However, as Merit fails to support this argument with any citation to authority, we will not address it. See Public Defender Comm’n v. Greene County, 343 Ark. 49, 32 S.W.3d 470 (2000).
 

 Merit also urges that the videotape was (1) cumulative, in that Dr. Valentine had already been permitted to display the actual instruments used during the procedure, and (2) prejudicial, because the tape showed Cooper in obvious discomfort, even with the sound muted. This court has held that a videotape is admissible and not prejudicial if it is relevant and helpful to the jury. See Hickson v. State, 312 Ark. 171, 847 S.W.2d 691 (1993).
 

 Here, the court found that, as Dr. Valentine explained the procedure, the jury could be aided by watching the video depicting the procedure. Prior to trial, the court had ruled that the tape’s probative value exceeded any prejudicial effect it might have, although the judge stated he had “reservations about the sound.” The court had watched the video at an April 3, 2000, pretrial hearing, and decided that it understood the purpose of the video was to show in graphic detail what Cooper had undergone in support of her damage element claim of pain and suffering. While the video may have been uncomfortable for a person to watch, it unquestionably was helpful to the jury’s understanding of the only treatment that alleviated the pain in her face. Since Dr. Valentine testified that Cooper would have to undergo such treatments indefinitely to remain pain free, the showing of the video was intended to demonstrate to the jury what her damages were. The trial judge did not abuse his discretion in allowing the videotape into evidence.
 

 Merit argues next that the trial court erred by restricting its use of Cooper’s previous discovery responses. Here, Merit had wanted to utilize assertions made during discovery in order to impeach Cooper’s trial testimony that she could not place a value on her pain and suffering. In one of her discovery responses, Cooper had directed Merit to her February 11, 1998, settlement brochure for a calculation of her claimed damages, which amounted to $17.20 per day; in April of 2000, however, her response to a similar interrogatory stated a figure closer to $150 per day for her pain and suffering. Merit sought to introduce these figures into evidence at trial, but the trial excluded them upon Cooper’s objection.
 

 Merit urges the trial court’s ruling was in error because Ark. R. Civ. P. 33(c) provides that answers to interrogatories may be used at trial to the extent permitted by the rules of evidence. In support of its argument, Merit cites Piercy v. Wal-Mart Stores, Inc., 311 Ark. 424, 844 S.W.2d 337 (1993). However, Piercy dealt with answers to interrogatories regarding whether Wal-Mart had experienced any prior slip-and-fall accidents in its stores, not with statements made in connection with settlement negotiations. Merit also cites Flynn v. McIlroy Bank & Trust Co., 287 Ark. 190, 697 S.W.2d 114 (1985), for its holding that a prior statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is inconsistent with his testimony. The Flynn case further holds that “[i]n civil cases this rule effectively allows all prior inconsistent statements to be introduced as substantive evidence in addition to any impeachment value they may have.” Id. at 193.
 

 While this is a correct statement of the law, it nevertheless fads to take into consideration our rules of civil procedure and rules of evidence concerning statements made during settlement negotiations. Ark. R. Civ. P. 33(c) provides that “[interrogatories may relate to any matters which can be inquired into under Rule 26(b), and the answers may be used to the extent permitted by the rules of evidence.” (Emphasis added.) Thus, we look to our rules of evidence, particularly Ark. R. Evid. 408, which, in pertinent part, reads as follows:
 

 Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. (Emphasis added.)
 

 Merit sought to impeach Cooper by using prior statements she made in an effort to settle her claim with Merit. Rule 408 makes such settlement statements inadmissible; thus, the trial court did not err in prohibiting Merit from using such statements for impeachment purposes.
 

 Merit’s fifth point is that the trial court should have declared a mistrial when Cooper’s counsel referred to insurance during closing arguments. The remarks to which Merit takes offense are the following:
 

 If you hurt someone, Mr. Physician, and cause injury to their hand, your hand will be cut off. It’s part of our culture. I love Jimmy Stewart in “It’s A Wonderful Life.” In the apothecary’s office, the medicine that is mixed turns out to be poison and George Bailey-catches it and tells him. My father-in-law, Norman Canterbury, is a pharmacist. As we were watching that movie, I said, “Norman, I bet your malpractice insurance would go sky high if you gave somebody poison in a prescription by accident. I hope you’ve got your malpractice paid up.” We professionals joke around with each other about that sort of negligence because when you are negligent and hurt someone you are responsible.
 

 At the conclusion of these remarks, Merit made no objection, nor did it move for mistrial. Therefore, this part of Merit’s argument is not preserved.
 

 The second alleged improper remark came later during Cooper’s closing arguments. At that stage of argument, Cooper’s counsel said as follows:
 

 I had a case with State Farm recently where my client just wanted to get his roof fixed and they accused him of insurance fraud and called him all kinds of ugly names. That jury wouldn’t have any of that. Don’t let JE Merit get away with the slime job they’ve tried to pull on this.
 

 At this stage of Cooper’s argument, Merit’s counsel approached the bench and asked for a mistrial because of the references to insurance. The trial court denied the motion, and it refused to give a cautionary instruction, because it would only reinforce what was said. The trial judge stated that, while counsel’s remarks may have been a poor example of argument, it was only argument.
 

 This court has repeatedly held that mistrial is a drastic remedy that should only be granted (1) when there has been error so prejudicial that justice could not be served by continuing the trial or (2) when the fundamental fairness of the trial has been manifestly affected. Farm Bureau Mut. Ins. Co. v. Foote, 341 Ark. 105, 14 S.W.3d 512 (2000); Arthur v. Zearley, 337 Ark. 125, 992 S.W.2d 67 (1999). The trial court has wide discretion in granting or denying a motion for mistrial, and that decision will not be disturbed on appeal absent an abuse of discretion or manifest prejudice to the movant. Id. Here, given the fact that the insurance references were not intended to draw attention to Cooper’s or Merit’s insurance coverage, but were instead mere illustrations drawn by counsel during his closing arguments, the trial court’s ruling on this issue cannot be said to reflect an abuse of discretion.
 

 For its sixth point, Merit contends that it was error for the trial court to require its expert, Dr. Reginald Rutherford, on cross-examination, to read verbatim the records of Dr. Susan Samlaska, Cooper’s initial treating doctor. Merit’s counsel gave Dr. Rutherford medical records for him to review, and asked him to give an independent medical examination, concerning Cooper’s medical problems. Rutherford described an independent medical examination as one needed when a second medical opinion is requested. Among other records, Merit provided Dr. Rutherford with Dr. Samlaska’s; he disagreed with Samlaska’s opinion that Cooper suffered from trigeminal neuralgia. During Dr. Rutherford’s testimony, Cooper asked him to read from Dr. Samlaska’s records in order to cross-examine him about how Dr. Samlaska’s diagnosis and treatment figured into his medical conclusions. Because Dr. Rutherford’s opinion was so different from those of Cooper’s other physicians, the trial court ruled that his credibility and the validity of his report were called into question, and Cooper’s cross-examination of Dr. Rutherford’s review of those records given him would be proper.
 

 To support its contention that allowing these statements into evidence was error, Merit cites Southern Farm Bureau v. Pumphrey, 256 Ark. 818, 510 S.W.2d 570 (1974), wherein this court held that the trial court erred in permitting the plaintiff Pumphrey’s treating physician to testify that nothing in a written report of an examination made by another doctor was inconsistent with the treating physician’s testimony as to Pumphrey’s injuries. The Pumphrey decision was based on the fact that it would have been hearsay for the treating physician to testify that, based on what the specialist told him, the specialist’s report was not inconsistent with his own; for the trial court to permit the treating physician’s statements was an impermissible attempt to do indirectly what could not be done directly. Id. at 819-20.
 

 The situation before us is distinguishable from Pumphrey. Here, the records were not being introduced as part of the plaintiff Cooper’s case in chief; rather, Cooper sought to use the records — furnished to Dr. Rutherford by defense counsel — to cross-examine Dr. Rutherford on the basis of his medical conclusions and to determine his credibility. This court has traditionally taken the view that the cross-examiner should be given wide latitude because cross-examination is the means by which to test the truth of the witness’s testimony and credibility. Fowler v. State, 339 Ark. 207, 5 S.W.3d 10 (1999); Wilson v. State, 289 Ark. 141, 712 S.W.2d 654 (1986). The court in Fowler further noted that the trial court is given wide discretion in evidentiary rulings, and we will not reverse unless the trial court has abused its discretion. Id.; see also State Hwy. Comm’n v. 1st Pyramid Life Ins., 269 Ark. 278, 602 S.W.2d 609 (1980) (emphasizing “the importance of according a wide latitude in questions on cross-examination tending to impeach the credibility of a witness or to elicit matter to be considered in weighing his testimony, particularly where expert opinion evidence is involved”); Arkansas State Highway Comm’n. v. Dean, 247 Ark. 717, 447 S.W.2d 334 (1969) (“The proper cross-examination of [an expert] witness is the most effective attack that can be made upon his credibility and the best means of diminishing the weight which might be accorded his testimony”).
 

 Further, the court of appeals, in Lawhon v. Ayres Corp., 67 Ark. App. 66, 992 S.W.2d 162 (1999), held that under Ark. R. Evid. 703, an expert must be allowed to disclose to the trier of fact the factual basis for his opinion because the opinion would otherwise be left unsupported, and the trier of fact would be left with little if any means of evaluating its correctness. Id. at 72. Again, it is significant that Merit gave Dr. Rutherford medical records to aid him in forming an opinion. In utilizing Dr. Samlaska’s records in the cross-examination of Dr. Rutherford, Cooper engaged in valid cross-examination to test the credibility of Dr. Rutherford’s conclusions, and she also was afforded the opportunity to examine the factual basis for Dr. Rutherford’s expert opinion. The trial court did not abuse its discretion in permitting this line of questioning.
 

 Merit also asserts that the trial court erred in excluding Dr. Rutherford’s own medical report on Cooper; the report contained Cooper’s history and Dr. Rutherford’s diagnosis as the result of his examination. The trial court ruled that if Dr. Rutherford had testified as to the contents of his report, that would be sufficient.
 

 Dr. Rutherford’s report was adequately summarized in his testimony, which did not fail to convey anything which appeared in the report; the report, as such, would have been cumulative. In Lovell v. Beavers, 336 Ark. 551, 987 S.W.2d 660 (1999), this court held that Ark. R. Evid. 403 permits a trial court to exclude relevant evidence “if its probative value is substantially outweighed ... by considerations of . . . needless presentation of cumulative evidence.” Id. at 554. This weighing is left to the trial court’s sound discretion and will not be reversed absent a showing of manifest abuse. Id. Here, the court weighed the relevant interests and concluded that the introduction of Dr. Rutherford’s actual report, in addition to his testimony that detailed the information contained in the report, would be unnecessarily cumulative. This decision cannot be said to be an abuse of discretion.
 

 In its seventh major point, Merit contends that the trial court improperly allowed Freddy Johnson to testify as an expert regarding the necessity of warning flags and cones alongside the highway where the bush hog was being operated. Merit also assigns error to Johnson’s statement that operating a bush hog without chains constitutes negligence. Merit points to Ark. R. Evid. 704, which states that “[testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact,” and cites cases which distinguish opinions which “embrace]] an ultimate issue” from those mandating a legal conclusion, which are not permissible. See, e. g., Marts v. State, 332 Ark. 628, 968 S.W.2d 41 (1998).
 

 The first of Merit’s contentions — that the court erred in permitting Johnson to testify as an expert because he lacked the knowledge, skill, experience, training, or education to qualify him as an expert — must be rejected because Merit did not raise a timely objection to Johnson’s qualifications to testify as an expert. See Stacks v. Jones, 323 Ark. 643, 916 S.W.2d 120 (1996) (any error argued on appeal must have first been directed to the trial court’s attention in some appropriate manner, so that the court had an opportunity to address the issue).
 

 Similarly, we dismiss Merit’s arguments that Johnson’s testimony — that operating a bush hog without chains was negligent — mandated a legal conclusion, as these statements also failed to draw an objection from defense counsel. In Marts v. State, supra, on which Merit relies, the appellant failed to object to a police officer’s opinion testimony that Marts was trafficking in methamphetamine, even where that issue was the ultimate question in the trial. This court held that it would not reverse on that point, because “a specific objection is necessary in order to preserve an issue on appeal.” Marts, 332 Ark. at 641.
 

 Merit also argues that the court erred in allowing Johnson to testify that it was negligent to operate the bush hog without warning cones or flags. However, we also reject this contention, because the ultimate issue in the case was whether Merit was negligent because of its failure to operate the bush hog without chains or protective skirting, and whether that negligence caused Cooper’s injuries. The issue of warning flags or cones was not central or relevant to these questions. In any event, Johnson’s opinion as to the presence or absence of warning flags or cones was not an opinion that mandated a legal conclusion that should have been excluded under Ark. R. Evid. 704.
 

 Finally, in its eighth major point, Merit urges that Cooper sought unreduced future medical expenses, and that she offered no proof as to what her future medical expenses would be. In support of this argument, Merit contends that, during closing arguments, Cooper’s counsel exhorted the jury to award the maximum possible figure without any reduction when he said, “$976,313.00, that’s what she’s asking for, no more, no less.” The jury eventually awarded Cooper $150,000.
 

 The trial court instructed the jury that closing remarks of counsel were not evidence, and that any argument having no basis in the evidence- should be disregarded. See AMI Civ. 3d 103(e). In addition, the trial judge gave the following instruction:
 

 I have used the expression “present value” in these instructions with respect to certain elements of damage which you may find that Louise Cooper will sustain in the future. This simply means that if you find that Louise Cooper is entitled to recover any elements of damage which require you to determine their present value, you must take into consideration the fact that money recovered will earn interest, if invested, until the time in the future when these losses will actually occur. Therefore, you must reduce any award of such damages to compensate for the reasonable earning power of money.
 

 As shown above, the jury was properly instructed to reduce any amount it awarded for future medical expenses. Absent evidence to the contrary, there is a presumption that the jury has obeyed its instructions. Pearson v. Henrickson, 336 Ark. 12, 983 S.W.2d 419 (1999). Although Merit argues Cooper should have presented expert testimony to prove the present value of her future medical expenses, no authority supports Merit’s position that she was required to do so.
 

 As to Merit’s assertion that Cooper did not prove her future medical expenses, we note that she offered the testimony of Dr. Valentine, who stated that his fee for a cryo-freeze procedure was currently $760, and he estimated Cooper would have to receive this procedure approximately four times per year. Thus, there was evidence to support Cooper’s request for, and the jury’s award of, future medical expenses. Further, the jury awarded damages on a general verdict form. In Pearson, supra, this court held that when a verdict is rendered on a general verdict form, it is an indivisible entity, and this court should not speculate as to the basis for a jury’s verdict. Id. at 20. Therefore, in the absence of any suggestion that the jury based its decision on something other than the evidence of damages presented to it, or that it did not follow the trial court’s instructions, we do not reverse the jury’s assessment of Cooper’s damages.
 

 For the reasons set forth above, we affirm the jury’s verdict in favor of Cooper.