2009 Ark. 221

**La'Ronda SLAUGHTER and Estate of Jerry Slaughter, Deceased, Appellants,**

v.

**CAPITOL SUPPLY CO., INC., Sherwood Valve Company and Brenntag Mid–South, Inc., Appellees.**

No. 08–534.

Supreme Court of Arkansas.

April 23, 2009.

Compton, Prewett, Thomas & Hickey, LLP, by: Floyd M. Thomas, Jr., and F. Mattison Thomas, III, El Dorado, for appellant.

Griffin, Rainwater & Draper, by: Gary M. Draper, Crossett, for appellee Supply Company, Inc.

Barber, MacCaskill, Jones & Hales, P.A., by: Robert L. Henry, III, and Cynthia W. Kolb, Little Rock, for appellee Sherwood Valve Company.

Shackleford, Phillips & Ratcliff, P.A., by: Brian H. Ratcliff, El Dorado, for appellee Brenntag Mid–South, Inc.

JIM HANNAH, Chief Justice.

La'Ronda Slaughter, individually and as the executor of the estate of Jerry Slaughter (La'Ronda), appeals an order of the Circuit Court of Calhoun County denying a motion for new trial. La'Ronda brought a personal injury and wrongful death case against appellees Capital Supply Co., Inc., Sherwood Valve Company, and Brenntag Mid–South, Inc., alleging that Jerry Slaughter suffered injury and death due to exposure to compressed chlorine gas that leaked from a cracked valve. Sherwood manufactured the valve. Brenntag installed the valve in a gas cylinder and filled it with gas, and Capitol

distributed the filled cylinder to Jerry's employer, the City of Hampton. The jury reached a verdict in favor of the appellees, and the circuit court denied La'Ronda's motion for new trial. We affirm the decision of the circuit court. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(b)(4), (5).

On November 17, 2004, Jerry Slaughter, together with fellow City of Hampton employees Carol "Buddy" Hennington and Monroe Slaughter, replaced an empty compressed chlorine cylinder with a full cylinder at a city well. The structure in which the chlorine cylinder was being replaced was small and lacked working ventilation. The new cylinder was connected to the well chlorination system, and Jerry opened the valve. Unknown to Jerry, Buddy, and Monroe, the valve was cracked, and upon opening, compressed chlorine was released. According to Jerry, the compressed gas hit him directly in the face and mouth. Jerry, Buddy, and Monroe immediately left the building. According to Buddy and Monroe, Jerry immediately began coughing and struggling to breathe. La'Ronda testified that when Jerry arrived home that night, he told her that he had almost been killed that day. Monroe testified that Jerry returned to work the next day but was still coughing and gagging. He also testified that Jerry was always a hard worker, but after the exposure he held back and ceased work entirely shortly thereafter.

On December 9, 2004, Jerry saw his family physician, Dr. Robert Watson, who began treating Jerry for respiratory problems. According to Dr. Watson's records, Jerry did not mention the chlorine inhalation on this first visit. According to La'Ronda, Jerry did tell Dr. Watson about the exposure. The treatment did not help. Jerry was hospitalized and died of respiratory failure on January 15, 2005. Three causes of death were listed in sequential order on the death certificate as pneumonia bacterial, pneumonia fungal, and chemical inhalation.

La'Ronda presented evidence at trial to show that the chlorine exposure triggered Jerry's HIV virus, causing AIDS and pneumocystis carinii pneumonia (PCP) culminating in his death. Appellees presented evidence to show that there was no injury from chlorine exposure, that Jerry's illness and death were caused by AIDS and PCP, and that his injuries and death were unrelated to the chlorine exposure.

The jury concluded that the chlorine exposure was not the proximate cause of Jerry's illness, death, and damages. La'Ronda filed a motion for new trial, which was denied. She appeals from the denial of that motion.

*Substantial Evidence*

La'Ronda argues that "the jury verdict of no defect [1] is not supported by substantial evidence." The jury did not find that there was no defect. The jury found that the appellees had not supplied "a product in a defective condition which was a proximate cause of plaintiff's claimed damages." Counsel for Sherwood in opening state-

1. We note that La'Ronda provides significant argument on how exposure of valves to ammonia in testing for leaks causes cracks in the valves. No ammonia was applied to the valve when the cylinder was installed. The installation process had not reached the point where the test for leaks is performed at the time the valve leaked. To the extent La'Ronda is arguing that prior applications of ammonia in prior installations of the subject cylinder may have caused the defect in the valve, there was no proof of prior application of ammonia at the time of installation, and no one argued that the valve was not defective. Appellees argued about when the defect appeared and that Jerry was not injured by the chlorine exposure.

ment set out the defense's case and stated that the issue was not whether there was a crack in the valve but rather was whether the injuries alleged were caused by chlorine exposure:

> [T]here was a crack in that valve. It was not in the valve when it left our company ... we're not going to make you make a decision about that .... But what you're going to hear is that actually this case is not about that crack. What you're going to hear is this case is about what caused Slaughter's death.

The jury concluded that Jerry's death was not proximately caused by exposure to chlorine gas.

Extensive evidence was presented by both sides with regard to causation of the respiratory disease process that took Jerry's life. La'Ronda offered evidence to show that Jerry was in good health prior to the exposure, that his injuries from the exposure were immediate, that he suffered increasingly severe complications from the exposure from November 17, 2004, until the day of his death, and that the exposure to chlorine gas was the event that precipitated his illness and demise.

Appellees put on evidence to show that the onset of Jerry's illness predated the chlorine exposure, that as early as October before the exposure in November, he had been losing weight. Dr. Henry F. Simmons testified that by the time of his hospitalization, Jerry had already lost the ability to make proteins required by his body. He testified further that Jerry's concentration of AD4 lymphocyte had dropped to a low level of 60. According to Dr. Henry F. Simmons, Jr., these were all signs of advanced HIV. Dr. James Waldron testified that the biopsied tissue showed that Jerry "had an entirely typical case of PCP." He further testified that a review of the tissue slides showed that chlorine had not entered his lungs sufficiently to cause injury from the exposure. Specifically, Dr. Waldron noted that there was neither the destruction of living tissue or the scaring that injury from chlorine exposure produces. Appellees' position was that Jerry suffered from AIDS, and that he simply died from complications due to that disease.

 Substantial evidence is "valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion, and force the mind to pass beyond conjecture." *Ark. Dep't of Human Servs. v. A.B.*, 374 Ark. 193, 199, 286 S.W.3d 712, 717 (2008). Both sides presented substantial evidence of the cause of Jerry's death, and the jury decided in the defense's favor. "Disputed facts and determinations of the credibility of witnesses are within the province of the factfinder." *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 219, 289 S.W.3d 466, 470 (2008). La'Ronda asserts that the evidence only pointed to liability. Even if this assertion were correct and the testimony she offered was uncontradicted and unimpeached, the jury is still free to believe or disbelieve the testimony of any witness. *See Farm Bureau Mut. Ins. Co. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000). We hold that substantial evidence supports the jury verdict.

### Collateral Estoppel

 La'Ronda argues that a judgment finding that Jerry's illness and death were proximately caused by the chlorine exposure has already been entered. She directs this court to *Estate of Slaughter v. Hampton*, 98 Ark.App. 409, 255 S.W.3d 872 (2007), where she appealed the decision of the Arkansas Workers' Compensation Commission that inhalation of chlorine gas was not the major precipitating event that led to Jerry's respiratory failure. The court of appeals held that this was not

a decision that "fair-minded persons with the same facts before them" could have reached. *Hampton*, 98 Ark.App. at 417, 255 S.W.3d at 878. The case was remanded to the Commission "for proceedings consistent with this opinion." What was ultimately decided by the Commission is not before this court. Thus, La'Ronda has not presented, and this court has not considered, the question of whether a court of competent jurisdiction has entered a judgment to which collateral estoppel may apply. *See Beebe v. Fountain Lake Sch. Dist.*, 365 Ark. 536, 231 S.W.3d 628 (2006) (stating that collateral estoppel applies to an issue that has been finally and definitely settled and determined on its merits by a court of competent jurisdiction). Further, La'Ronda did not present the question, and this court does not consider, whether a decision by the Commission that an injury is work related for purposes of an award of compensation benefits constitutes a final judgment by a court of competent jurisdiction that Jerry's injuries and death at issue in the circuit court action were caused by the chlorine exposure. Further, even if collateral estoppel did apply, the elements cannot be met. "The party against whom collateral estoppel is asserted must have been a party to the earlier action." *Powell v. Lane*, 375 Ark. 178, 185, 289 S.W.3d 440, 444 (2008). Appellees were not parties to the workers' compensation action at issue before the court of appeals.

### AMI 106A

La'Ronda alleges that the failure of Brenntag to put its vice-president of production, and Sherwood's failure to put its in-house engineer on the stand at trial give rise to an inference that their testimony would have been unfavorable. Based on this alleged inference, La'Ronda asserts the circuit court erred in refusing to instruct the jury with AMI 106A on adverse inference. Instruction 106A provides as follows:

> Where relevant evidence is within the control of the party in whose interest it would naturally be to produce it, and that party fails to do so without satisfactory explanation, you may draw the inference that such evidence would not have been favorable to that party.

We are cited to *Saliba v. Saliba*, 178 Ark. 250, 255–56, 11 S.W.2d 774, 776 (1928), where this court stated that an instruction similar to AMI 106A was proper where the defendant in a personal injury case arising from an automobile accident, who was driving the car, and who knew whether the injury was caused as alleged by putting the car in reverse, was present in court at the trial but did not testify. This court concluded in *Saliba* that the defendant's testimony would not have been trivial or cumulative because the question was whether defendant's car was put in reverse, and the defendant was the driver. *Id.* In *Saliba*, the plaintiff showed that the defendant had knowledge relevant to the cause and chose not to testify. La'Ronda conversely alleges that because Brenntag and Sherwood's witnesses held positions of significant authority, they must have had significant knowledge. We note that Brenntag's witness, its vice-president of production, and Sherwood's witness, an in-house engineer, were deposed, and their depositions were introduced into evidence and read at trial. La'Ronda fails to show that the witnesses had knowledge beyond that revealed in their depositions. We also note that while La'Ronda argues that the "failure of a party present to testify at trial supports such an instruction," neither witness she complains of was present at trial.

Instruction 106A provides that where relevant evidence is in the control of a party in whose natural interest it would be to produce it, and the party does not pro-

duce it, an inference may be found that the evidence was unfavorable. La'Ronda identifies no relevant evidence that was in the possession of the witnesses that they would have naturally been expected to produce that was not disclosed in their depositions. Rather, she asserts that the witnesses were beyond the subpoena power of the circuit court, and that, because the two witnesses were deposed before trial and did not appear at trial, an inference must arise that their cross-examination would have been unfavorable to appellees. No such inference arises under the common law set out in *Saliba, supra,* or under AMI 106A. What gives rise to the inference is identified relevant evidence in the possession of a party in whose interest it is to produce it and who fails to do so without satisfactory explanation. *Volunteer Transp., Inc. v. House,* 357 Ark. 95, 101, 162 S.W.3d 456, 459 (2004); *Cox v. Farrell,* 292 Ark. 177, 182, 728 S.W.2d 954, 956 (1987). The circuit court did not abuse its discretion in refusing to instruct the jury on AMI 106A. *See Williams v. First Unum Life Ins. Co.,* 358 Ark. 224, 188 S.W.3d 908 (2004).

### Refusal to Admit Documents Revealing Knowledge of Leaks

La'Ronda alleges that the circuit court erred in refusing to admit the following documents:

1. An undated Sherwood Chlorine Valve Assembly product bulletin referencing Jerry's November 17, 2004 exposure warning of possible cracks in the valve body (proffered exhibit 2g);

2. An undated Safety Alert from The Chlorine Institute, Inc. referencing cracks in the valves and noting two recent incidents where the leak occurred at the customer site (proffered exhibit 2h);

3. An April 19, 2005 Inspection Procedures from The Chlorine Institute, Inc. regarding inspection of valves for cracks. Two incidents were noted where the leak occurred upon opening the valve (proffered exhibit 2i);

4. A September 15, 2005 Sherwood Chlorine Safety Notice regarding cracks in valves and recommending against the use of ammonia to test for leaks (proffered exhibit 2j);

5. A February 16, 2005 letter from The Chlorine Institute to Sherwood regarding cracked valves manufactured by Sherwood and whether installation of valves using fifty pounds of torque was too great and a cause of cracks. Appended is an undated Sherwood Chlorine Valve Assembly Product Bulletin noting a November 17, 2004 Chlorine Institute bulletin regarding valves, their care and proper torque (proffered exhibit 2k);

6. A February 8, 2005 Central Testing Laboratories report to Sherwood regarding valve failures and stress corrosion cracking failures. Ammonia as a corrosive agent is noted (proffered exhibit 2x).

The documents were excluded as evidence of remedial repair under Arkansas Rule of Evidence 407. La'Ronda alleges this was error. However, La'Ronda's failure expert, mechanical engineer Mark Tanner, testified that he had reviewed the above noted proffered exhibits, and that he had based his opinion in part on those documents. He testified directly from the proffered exhibits, noting what each contributed to his opinions, and discussed the defects in the valves and possible causes of the cracks, such as application of ammonia and using too much torque. Where excluded documents are sufficiently summa-

rized in testimony, it is not an abuse of discretion to exclude them even though they may be relevant. *See, e.g., J.E. Merit Constr. Inc. v. Cooper,* 345 Ark. 136, 44 S.W.3d 336 (2001). The evidence La'Ronda complains was wrongfully excluded was admitted by sufficient summary by Tanner making this issue moot. We do not address moot issues. *See Ryan & Co. AR, Inc. v. Weiss,* 371 Ark. 43, 263 S.W.3d 489 (2007).

### Personal Beliefs of Counsel Stated in Argument

█ La'Ronda argues that the case should be reversed because defense counsel impermissibly bolstered a witness's qualifications in argument and stated beliefs about the cause of action. No objection was made at the time of the alleged improper argument. The issue is first raised in the motion for new trial. This court has repeatedly held that an objection first made in a motion for new trial is not timely. *Jones v. Double "D" Props., Inc.,* 352 Ark. 39, 48, 98 S.W.3d 405, 410 (2003).

### Whether the Circuit Court Erred in Permitting Video Testimony of Expert Dr. White that Jerry's Chlorine Exposure Was Not Significant

█ La'Ronda asserts that the circuit court erred in overruling an objection to admission ₁₁of defendant's medical expert Dr. Peter White's video testimony where she argued that there was no foundation for his conclusion that Jerry's exposure was not significant. She alleges that Dr. White's testimony on this issue was a comment on the evidence rather than a medical opinion. La'Ronda argued to the circuit court that there was no basis for this conclusion by Dr. White, that "his bare assertion that every single human being who experiences a chlorine exposure would behave in a certain way, without more, is not an opinion based on valid scientific

criteria." She further asserts that his opinion with regard to chlorine exposure was "essentially a lay opinion as to the amount of chlorine exposure."

Dr. White's opinion was that Jerry suffered from end-stage AIDS and PCP and that the mortality rate in a person in his condition is in excess of eighty-five percent. As to exposure, Dr. White testified that "Mr. Slaughter's clinical course is not consistent with any of the described syndromes that you would develop after an intense chlorine exposure," and that under the allegations in this case, Jerry would have shown the abrupt onset of pulmonary edema or reactive airways dysfunction syndrome. He testified that in either case, "these patients are very ill and have severe refractory bronchospasms or wheezing, and they are short of breath, air-hungry, and they invariably present for medical evaluation within 24 hours of the acute exposure." Dr. White stated he did not believe that a person who suffers acute chlorine exposure can just choose "to tough it out."

₁₂We are cited to *Maxwell v. State,* 279 Ark. 423, 426, 652 S.W.2d 31, 33 (1983), for the proposition that there must be evidence to support an expert's opinion. At issue in *Maxwell* was a simple inference given greater emphasis by being offered as expert opinion. Such is not the case in Dr. White's testimony. Dr. White testified that based on his experience as a pulmonologist, if Jerry had suffered chlorine exposure as alleged, he would have sought and required significant medical care within a day of exposure. He also expressed the opinion that the clinical course of treatment provided to Jerry indicated end-stage AIDS and PCP, as opposed to chlorine exposure. The reasoning or methodology underlying expert testimony is valid and was properly applied to the facts in the case. *See Coca–Cola Bottling Co. v.*

*Gill*, 352 Ark. 240, 100 S.W.3d 715 (2003). There was no abuse of discretion in allowing Dr. White to testify as to chlorine exposure based on Jerry's medical care.

### Error in Failing to Order Production of the Privilege Log

La'Ronda alleges that the circuit court erred when it refused to require appellees to produce an alleged log setting out documents appellees believed were privileged. La'Ronda makes a bare assertion with no reference to any authority whatever. We do not consider arguments without convincing argument or citation to authority in support unless it is apparent that the arguments are welltaken. *Hart v. McChristian*, 344 Ark. 656, 668, 42 S.W.3d 552, 560 (2001). We will not develop an issue for a party. *Alexander v. McEwen*, 367 Ark. 241, 248, 239 S.W.3d 519, 524 (2006).

### Production of the Joint Defense Agreement

La'Ronda asserts that the defendants entered into a joint defense agreement that was against public policy. We are cited to *Firestone Tire & Rubber Co. v. Little*, 276 Ark. 511, 639 S.W.2d 726 (1982), and La'Ronda argues that the defense agreement is similar to a "Mary Carter" agreement. "A Mary Carter agreement is one in which a plaintiff secretly agrees with a defendant that if the plaintiff recovers from another defendant, the agreeing defendant's liability will be reduced." *Firestone*, 276 Ark. at 513–14, 639 S.W.2d at 728. Secret agreements between plaintiffs and one or more of several multiple defendants may mislead judges and juries, and they border on collusion. *Id.*, 639 S.W.2d at 728. Such an agreement subverts the adversarial process by collusion between the very parties who are thought by the jury to be pitted against each other.

*Id.* In this case, the defense agreement resolves how the appellees would collectively address defense issues that were common to each appellee. There is no reference to an agreement with the plaintiff as in *Firestone*. La'Ronda offers no evidence or convincing authority for the proposition that the defense agreement would subvert the adversarial process. Further, La'Ronda provides no convincing authority or argument as to why the principles of a "Mary Carter" agreement should be applied to an agreement between defendants regarding how they will handle defense issues common to all defendants. There is no merit to this issue.

Affirmed.