2010 Ark. 89

**Roderick WILLIAMS, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–355.**

Supreme Court of Arkansas.

Feb. 25, 2010.

---

Adam Lee Hopkins, Fayetteville, AR, for appellant.

Karen Virginia Wallace, Little Rock, AR, for appellee.

JIM HANNAH, Chief Justice.

Appellant Roderick Williams was convicted of capital murder, kidnapping, first-degree domestic battering, endangering the welfare of a minor, and being a felon in possession of a firearm, and he was sentenced to a term of life imprisonment plus seventy-two years. On appeal, he contends that the circuit court erred in failing to grant a mistrial after a witness falsely accused him of having been previously convicted of terroristic threatening. He further contends that the circuit court's admonition to the jury following the statement only served to bolster the false testimony and constitutes an additional ground for reversal. Williams also contends that the circuit court erred in admitting a statement that his son allegedly made to law enforcement on the night of the murder because the statement was manifestly prejudicial, lacked probative value, and constituted inadmissible hearsay. Finally, Williams makes a cumulative-error argument, contending that this case requires reversal because all of the errors committed by the circuit court were patently prejudicial to his defense and prohibited him from receiving a fair trial. Because this is a criminal appeal in which a sentence of life imprisonment has been imposed, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2010). We reverse and remand to the circuit court.

Testimony at trial revealed the following facts. On the evening of April 26, 2007, Clara Cobb was shot and killed while on the front porch of her home in Pickens. At home with her at the time of her murder were her daughter, Kerman Harris, and Harris's infant daughter, KyBriunna. Williams, the father of KyBriunna, went to the house that evening, and Cobb went out on the porch to speak to him. While on the porch, Williams loaded the shotgun he was carrying and shot Cobb in the abdomen. He then went inside the house and forced Harris and the baby outside and into the car with him and his uncle. Williams beat Harris with a shotgun until it broke, breaking her arm and wrist, and then put his uncle and the baby out on the side of the road. Williams experienced car trouble, and he and Harris caught a ride to a trailer, where they stayed until the following afternoon when the SWAT team arrived. Williams was then taken into custody.

Williams was subsequently tried by a jury and, as already noted, was convicted of capital murder, kidnapping, first-degree domestic battering, endangering the welfare of a minor, and being a felon in possession of a firearm, and was sentenced to life imprisonment, plus seventy-two years. He now appeals.

Williams contends that the circuit court erred in refusing to grant a mistrial after Harris testified falsely that he had previously been convicted of terroristic threatening for threats he made to Cobb. Additionally, Williams contends that the circuit court's admonition to the jury to disregard the testimony only served to further bolster the false statement and constitutes an additional ground for reversal.

The decision to grant or deny a motion for mistrial is within the sound discretion of the trial court and will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Johnson v. State*, 366 Ark. 8, 233 S.W.3d 123 (2006). A mistrial is a drastic remedy and should only be declared when there is er-

ror so prejudicial that justice cannot be served by continuing the trial, and when it cannot be cured by an instruction to the jury. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007).

At trial, during the direct examination of Harris, the prosecutor questioned her about Williams's relationship with her mother, Cobb. The following colloquy took place between the prosecutor and Harris:

Q: To the best of your knowledge, all right, do you have any great knowledge from actually being present in any conversation or anything like that to whether your momma and the Defendant, Roderick Williams, did not like one another? Was there any kind of—Was she preventing him from seeing the baby or anything like that?

A: No, she wasn't.

Q: Did she ever sign a protection order on him or anything like that?

A: No, she didn't, but he had threatened her. And when she went to court it was terroristic threatening, which Roderick Williams was convicted of.

At that point, defense counsel objected, contending that Harris's statement was false [1] and that no instruction could cure the prejudice. The circuit court denied the motion and instructed the jury as follows:

THE COURT: Also, there's one thing I want to bring to your attention and that is, during the questioning by the prosecutor just before the recess, in response to a question, the witness here indicated or stated that the Defendant Roderick Williams had been convicted of terroristic threatening.

That particular response is to be disregarded. And when I say it should be disregarded, basically that means that during your deliberation you should not consider that particular response. Okay.

Williams asserts that, based on established precedent, Harris's false accusation was so prejudicial, he is entitled to a new trial. In support of this argument, Williams cites *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996); *Lackey v. State*, 283 Ark. 150, 671 S.W.2d 757 (1984); *Wingfield v. State*, 303 Ark. 291, 796 S.W.2d 574 (1990); and *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006).

In *Moore*, the defendant was on trial for the capital murder and rape of a ninety-year-old woman, and of the burglary of her home. During cross-examination by defense counsel, a witness who testified that the defendant had confessed to killing the woman was asked if anyone else was present at the time of the confession. The witness answered, "No, but he admitted to killing another woman to his brother." *Moore*, 323 Ark. at 536, 915 S.W.2d at 288. The defendant moved for mistrial, and the motion was denied. The trial court admonished the jury to disregard the witness's answer to defense counsel's question. We reversed the trial court, stating that the witness's "unresponsive testimony that the appellant had admitted he killed another woman was so prejudicial that it could not be cured by an admonition to the jury," and that "the trial court's denial of the motion for mistrial was abuse of discretion in the face of such a patently inflammatory and prejudicial statement." *Id.* at 537, 915 S.W.2d at 289.

In *Lackey*, the trial court permitted the State to elicit testimony that the defen-

---

1. There was no evidence in the record that Williams had been convicted of terroristic threatening. There was evidence that a charge for terroristic threatening had been nolle prossed; however, the State was unable to identify the complainant in the case.

dants, who were on trial for rape, had given marijuana to three children. The defendants moved for a mistrial, contending that the evidence was highly prejudicial. The trial court denied the motion for mistrial, but admonished the jury to disregard the testimony. We reversed, due to the irrelevant and prejudicial nature of the testimony, stating that the "admonition in this case was useless, the damage having been done." *Lackey*, 283 Ark. at 153, 671 S.W.2d at 759 (citing *Maxwell v. State*, 279 Ark. 423, 652 S.W.2d 31 (1983) (holding that, in a prosecution for the first-degree murder of a woman, where defendant admitted on the stand that he was a convicted rapist, a mistrial was warranted and an admonition could not cure the error where a prosecutor referenced the age—eleven years old—of the rape victim)).

In *Wingfield*, we held that the trial court abused its discretion in denying the defendant's motion for mistrial where, during direct examination by defense counsel, a law enforcement witness referenced a polygraph examination that he had given to another witness who was favorable to the prosecution. The defendant moved for a mistrial, contending that the jury would presume that the police and prosecution believed the witness because he took—and must have passed—a polygraph examination. We reversed and remanded, holding that, under the facts of the case, the reference to the polygraph test was an attempt by the police officer to bolster the veracity and credibility of a witness; therefore, it constituted prejudicial error.

In *Green*, the defendant was tried on four counts of capital murder and one count of kidnapping. At trial, a witness for the State testified that she was afraid for her brother, one of the murder victims, because her brother and her nephew had stolen some of the defendant's marijuana plants and her nephew had died mysteri-

ously after the theft. The defendant moved for a mistrial, but the trial court instead offered a limiting instruction. The defendant accepted the offer, but a limiting instruction was not immediately given. After the same witness made another reference to the theft of marijuana plants, the defendant renewed his motion for mistrial. The trial court again offered a limiting instruction, but this time the defendant responded, "I don't know yet." *Green*, 365 Ark. at 495, 231 S.W.3d at 652. Later, the trial court offered a limiting instruction that "there's been absolutely nothing to prove" a link between the defendant and the nephew's disappearance, and that "it was only elicited for the fact to show fear on behalf of [the witness]." *Id.*, 231 S.W.3d at 652. The defendant declined the limiting instruction on the basis that he feared it would be more prejudicial. Upon reviewing the testimony, we stated: "First, [the witness's] statement was clearly prejudicial and alluded to her belief that Appellant played a role in [her nephew's] murder and disappearance. Second, no admonition could have cured this statement, even if a trial court had intervened and attempted to curb the statement's effect on the jury." *Id.*, 231 S.W.3d at 652. Accordingly, we held that a mistrial was warranted.

Williams contends that, like the cases cited above, the instant case involves witness testimony that was undisputedly inadmissible and prejudicial. He states that the mere utterance of the words "terroristic" and "threatening" are highly prejudicial, given the connotation that those words have in our society today. Further, he states that, as was the case in *Wingfield*, the statement here was not only inadmissible, but it was incorrect and thus gave the jury a false presumption that he had previously been convicted of a crime against the murder victim. Williams asserts that Harris's false statement un-

doubtedly forged a distinct impression in the minds of jurors that he had a history of terrorizing and threatening the murder victim, and that this history was so serious that charges were filed and he was convicted in a court of law.

The State responds that the circuit court did not err in denying the motion for mistrial because the testimony was not solicited by the prosecution, it was not responsive to the question asked, and the circuit court admonished the jury to disregard it, curing the error. We disagree and hold that a mistrial was warranted in this case. Further, we hold that the statement was so prejudicial, it could not be cured by an admonition to the jury.

██ Here, Harris testified that Williams had previously been convicted of terroristic threatening for an incident involving her mother, the murder victim. Even though there was no proof that Williams had been convicted of terroristic threaten-

ing, or that the nolle prossed charges for terroristic threatening involved an incident with the victim, the State received the benefit of the prejudicial testimony. We hold that the circuit court abused its discretion in denying Williams's motion for mistrial. Accordingly, we reverse and remand for a new trial.[2]

│₈Because we reverse and remand due to the circuit court's failure to grant a mistrial, we need not address Williams's cumulative-error argument. However, we will address Williams's argument regarding the admission of a statement allegedly made by his son to law enforcement because this issue is likely to arise again on retrial.

Williams contends that the circuit court erred in admitting evidence of a statement that his son, eleven-year-old Roderenon Williams,[3] allegedly made to law enforcement on the night of the murder. During

---

**2.** After quoting an excerpt of Williams's counsel's response to a question at oral argument, the dissent asserts that Williams's "counsel now admits that the problem could have been cured, but for the defense's failure to proffer his own curative instruction." Contrary to the dissent's statement, counsel did not admit that the prejudice would have been cured had he "proffered" his own curative instruction; moreover, counsel was not required to "proffer" an instruction, as he would in, for example, a case involving the refusal of a jury instruction. Most important, the dissent mischaracterizes what counsel said at oral argument, by omitting the remainder of his response, which is necessary to an understanding of the issue. In discussing a curative instruction, counsel stated at oral argument:

> I know that the defense continued to pursue a mistrial and several pages further into the record the defense finally concedes and says I suppose, you know, an instruction that it was false and there is no evidence to support it would be good enough, Judge. And to me that is accepting the stipulation and asking the judge to then proceed with that.

Indeed, a review of the record reveals that the State offered to stipulate that Williams had not been convicted of terroristic threatening; however, the circuit court refused to instruct the jury that there had been no conviction, instead instructing the jury to disregard the testimony that Williams had been convicted of terroristic threatening. That instruction did not cure the prejudice, and, furthermore, a review of this court's precedent cited herein, *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996); *Lackey v. State*, 283 Ark. 150, 671 S.W.2d 757 (1984); *Wingfield v. State*, 303 Ark. 291, 796 S.W.2d 574 (1990); and *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006), makes clear a mistrial was warranted in this case. These cases, each involving prejudicial testimony during the trial of a criminal defendant whose liberty was at stake, are more analogous to the instant case than the civil case, *J.E. Merit Constructors, Inc. v. Cooper*, 345 Ark. 136, 44 S.W.3d 336 (2001), cited by the dissent.

**3.** Both the State and Williams state that Williams's son was nine or ten at the time of the crimes.

the State's case-in-chief, the prosecutor called Roderenon to the stand. Roderenon testified that he never saw or spoke to any law enforcement officers on the night of the murder. The prosecutor then asked Roderenon to read part of a statement that he allegedly gave to police. Roderenon testified that the statement did not refresh his memory; he stated that, "at the time that this was going on, I was asleep."

The State then re-called Deputy Jonathan Byrd to the stand for the purpose of impeaching Roderenon's testimony. He testified that he was present when Roderenon was interviewed. Defense counsel objected, contending that the prosecutor was trying to introduce hearsay evidence and to impermissibly "collaterally impeach" Roderenon. The circuit court rejected Williams's argument and made the following ruling:

> The Court finds that the testimony by Roderenon Williams of not remembering anything that happened was sufficiently inconsistent with his prior statement given to the police. Further, the witness was given an opportunity to explain or deny the prior inconsistent statement and he did not admit having made such statement. The State may use extrinsic evidence, his prior statement under Rule 613(b) for impeachment purposes.

The circuit court admonished the jury that testimony regarding the content of Roderenon's statement to the police was not to be considered for the truth of the matter set forth in the statement, but that it could be considered by the jury for the purpose of judging the credibility of Roderenon.

The State then called Desha County Sheriff Jim Snyder to the stand. Sheriff Snyder testified that, on the night of the crimes, Roderenon told law enforcement that his dad had come home mad, got a shotgun and a handful of shells out of a drawer, and said he was going to kill Harris. According to Sheriff Snyder, Roderenon said that after his father made the statement, he left the house, and Roderenon had not seen him since. Sheriff Snyder testified that Roderenon told law enforcement the same story "multiple times." On cross-examination, Snyder acknowledged that the author of the report of Roderenon's statement neglected to sign it.

■ Williams asserts that, when the court considers the entirety of the circumstances, in addition to applicable law, it will become clear that the State's purpose was not to introduce the statement to impeach the witness, pursuant to Rule 613(b) of the Arkansas Rules of Evidence, but to introduce the statement as substantive evidence of his guilt. Citing *Roberts v. State,* 278 Ark. 550, 648 S.W.2d 44 (1983), Williams contends that the admission of the statement requires reversal.

In *Roberts,* an eyewitness gave an unsworn statement to the police implicating the defendant in a murder. Subsequently, the witness gave the police two additional statements, in which he admitted that the original statement was untrue. At trial, the State called the witness to the stand and impeached him with the initial statement that implicated the defendant. We held that such impeachment was "mere subterfuge" for the State's true intention of introducing the statement as substantive evidence of the defendant's guilt. *Id.* at 552, 648 S.W.2d at 46. We also determined that the "limiting instruction to the jury directing them to consider the prior inconsistent statement for impeachment only was not a sufficient safeguard." *Id.* at 552, 648 S.W.2d at 46.

In a later case discussing *Roberts,* however, we held that *Roberts* was not controlling where there was no evidence that the

State knew that its witness would contradict her earlier statements to police. *See Roseby v. State*, 329 Ark. 554, 953 S.W.2d 32 (1997), *overruled on other grounds by MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998); *see also McFerrin v. State*, 344 Ark. 671, 42 S.W.3d 529 (2001); *Kennedy v. State*, 344 Ark. 433, 42 S.W.3d 407 (2001). The same reasoning applies in the instant case. Williams's counsel acknowledged during oral argument before this court that there was no evidence that the State knew that, at trial, Roderenon would deny making a statement to police.

■ Finally, Williams contends that the admission of Roderenon's statement that Williams stated his intent to kill Harris "was manifestly prejudicial because it constituted the only evidence heard by the jury that pertained to the Defendant's state of mind just prior to the murder." Williams states that the inadmissible statement was the "cornerstone" in the State's case for capital murder, as it was evidence of premeditation and deliberation. In response, the State points out that the jury returned a general verdict of "guilty" on the capital-murder charge, and because the verdict form did not specifically indicate whether the jury convicted Williams of capital murder based on the theory that he killed the victim while intending to kill Harris, or on the theory that he killed the victim while acting with intent to kidnap Harris, he cannot prove that he was prejudiced by the evidence of Roderenon's statement. We agree. Because a general-verdict form was used, there is no way to discern the basis of the jury's capital-murder verdict and, thus, there is no way for this court to address Williams's allegation of prejudice. Based on the foregoing, we hold that the circuit court did not abuse its

discretion in admitting evidence of Roderenon's statement to law enforcement.

Reversed and remanded.

GUNTER and WILLS, JJ., dissent.

GUNTER, J., dissenting.

In its opening statement, defense counsel disclosed that appellant, Roderick Williams, had prior convictions. During her testimony, Kerman Harris, in an unresponsive answer regarding the relationship between her mother and Williams, indicated that Williams "had threatened her [mother] and when she went to court it was terroristic threatening, which Roderick Williams was convicted of." Defense counsel objected and moved for mistrial. The trial court denied the motion and instructed the jury not to consider the answer. Defense counsel objected, claiming the court should have told the jury that the statement was false, yet failed to proffer its own instruction. Further, defense counsel declined to cross-examine the witness.

During oral arguments held February 11, 2010, when asked if the jury instruction could have been cured by a proper instruction, defense counsel responded, "I think that if the trial judge had said, 'jury, there is no evidence to support this, and the State and the defense both agree that this is a false statement,' I believe, that would have gone a long way to curing it."

Defense counsel now admits that the problem could have been cured, but for the defense's failure to proffer his own curative instruction.

This court has repeatedly stated that the decision to grant or deny a motion for mistrial is within the sound discretion of the trial court. *Johnson v. State*, 366 Ark. 8, 233 S.W.3d 123 (2006). A trial court will not be overturned unless there is a showing of abuse or manifest prejudice to the

appellant. *Id.* "[A] mistrial is a drastic remedy and should be declared when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when it cannot be cured by an instruction." *Travis v. State,* 371 Ark. 621, 625, 269 S.W.3d 341, 344 (2007). "Absent evidence to the contrary, there is a presumption that the jury has obeyed its instructions." *J.E. Merit Const., Inc. v. Cooper,* 345 Ark. 136, 150, 44 S.W.3d 336, 347 (citing *Pearson v. Henrickson,* 336 Ark. 12, 983 S.W.2d 419 (1999)). On the facts of this case, Ms. Harris's statement did not prejudice Appellant to the extent necessary to warrant a mistrial.

Though we say that declaring a mistrial is a drastic remedy, here the majority unnecessarily reverses the trial court. Since defense counsel told the jury in advance that Appellant had prior crimes in his background, then defense counsel failed to proffer his own instruction, and also refused to cross-examine the witness, I would affirm the trial judge's denial of motion for mistrial. I find it imprudent of the majority to assume, contrary to *Pearson, supra,* that the jury would not follow the curative instruction. I think that the majority's grant of a drastic remedy that the trial judge refused is improper because it is contrary to established case law and good judgment. I would affirm.

WILLS, J., joins this dissent.