2011 Ark. 9

**Michael D. JACKSON, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–43.**

Supreme Court of Arkansas.

Jan. 20, 2011.

ROBERT L. BROWN, Justice.

|₁Appellant Michael Dashaun Jackson was convicted of capital murder, criminal attempt to commit capital murder, and aggravated robbery, with a firearm enhancement, and sentenced to life in prison without parole. He raises three points for reversal. None of the points raised have merit, and we affirm.

The facts underlying his conviction and sentence are straightforward. On November 13, 2007, three men, Jackson, Sammie Madden, and Cherick Coleman, entered the home of David Rogers in North Little Rock. Rogers operated a candy and snack store from his home and also sold Avon products. Rogers's stepson, Shawn Bisbee, lived in the home in exchange for helping Rogers operate the store. Rogers testified that the three men demanded money, forced him to lie face down on the floor of the dining room, and took Bisbee back to a bedroom. Rogers emptied the cash register and one lockbox hidden in the |₂home. Rogers also told the men about a gun he kept hidden under the cash register. Coleman testified at trial that only Jackson and Madden were armed with guns when they entered but Jackson handed him the gun taken from under the cash register.

While Rogers was in the dining room, at least one of the three intruders was searching the bedroom where Bisbee was also forced to lie face down on the floor. There was a second lockbox hidden under Rogers's bed, but Rogers could not find a key to unlock it. At this point, Rogers testified he was taken to the bedroom and was forced to lie face down on the floor. He testified that both he and Bisbee were struck in the back of the head with pistols. When Rogers could not open the second lockbox, Bisbee was stabbed in the back by Jackson four times, and his throat was cut by Jackson.[1] Jackson then shot Bisbee and Rogers in the back of the head before all three fled the home. Coleman testified that he dropped the gun he was given by Jackson in the front yard. Rogers survived the attack, but Bisbee died as a result of his injuries.

The three points mounted by Jackson for reversal are: (1) the trial court erred in refusing to grant him a mistrial after the prosecutor elicited testimony from a witness that had already been ruled inadmissible; (2) the trial court erred in refusing to allow the defense to question co-defendant Cherick Coleman about a subsequent arrest and misdemeanor gun-possession charge because the gun possession was relevant to determining credibility; and (3) the trial court erred in excluding the testimony about a bag of a substance that may have been marijuana found by police officers at the Rogers's residence after the crime.

For each of Jackson's three points on appeal, this court applies an abuse-of-discretion standard in its review. The trial court has wide discretion in granting or denying a motion for mistrial, and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Smith v. State*, 354 Ark. 226, 243, 118 S.W.3d 542, 552 (2003). In addition, it is well settled that the admission or rejection of evidence is left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Davis v. State*, 362 Ark. 34, 44, 207 S.W.3d 474, 482 (2005).

Jackson's first point on appeal is that the trial court abused its discretion in refusing to grant a mistrial after the prosecutor elicited testimony from a state witness, Charmella Powell, concerning information previously deemed inadmissible. Prior to trial, the State notified the trial court that Jackson's brother, Christopher Jackson, allegedly went to Powell's home and threatened her about her testimony. In response to this, the trial court banned Christopher Jackson from the courtroom during Powell's testimony and admonished all of the spectators present in the court not to have contact with any witnesses. The trial court, in addition, made the following statement to the attorneys, "[a]lso, unless there was some allegation that the Defendant was involved in this, then it won't be mentioned, of course, in front of the jury."

During direct examination of Powell, the State asked the following questions:

PROSECUTOR: Okay. I mean do you know [Jackson's] family?

WITNESS: No, ma'am.

PROSECUTOR: All right. You came to court this morning, correct?

WITNESS: Yes, ma'am.

PROSECUTOR: Did someone come to see you before court?

WITNESS: Yes, ma'am.

---

1. Rogers was unable to identify any of the perpetrators. Coleman, however, testified about Jackson's actions during the course of the robbery.

At this point, Jackson's counsel objected and first moved for a mistrial or, alternatively, for an admonition to the jury to disregard the question.[2] The basis for the objection was that eliciting information regarding witness intimidation was improper and prejudicial in the absence of any evidence that Jackson himself elicited, authorized, solicited, or in some way commanded his brother to go visit Powell. The court denied the motion for mistrial, saying:

> Your motion for mistrial is denied at this time. Your motion to prevent her from testifying to anything further about this is granted. And regardless of whether she's scared or not or has any rational foundation for that, unless there's a connection to [Jackson], it is unfairly prejudicial.... We've brought out something that I specifically said not to bring out. One more misstep and I'm going to have to grant his motion for mistrial.

The trial court then instructed the jury to ignore the last question. On appeal, Jackson argues that the unsupported implication that Jackson was involved in threatening Charmella Powell and the prosecutor's disregard of the trial court's specific directive warranted a mistrial for two reasons. First, the defense maintains that the only purpose of the question regarding a visit before the trial began, and indeed the only effect, was to prejudice the jury. Further, the defense urges that there is no other way to deter prosecutors from violating court orders than to grant a mistrial for this incident of flagrant disobedience. We disagree with Jackson's argument on this point.

Jackson cites this court to *Williams v. State*, 2010 Ark. 89, 377 S.W.3d 168, and four other cases cited therein, to support his contention that the prosecutor's questioning in this case was so patently prejudicial that it warranted a mistrial. The testimony at issue in this case, however, is drastically different from what occurred in *Williams* and those other cases. In *Williams*, the witness testified falsely that the defendant, Roderick Williams, had previously been convicted of terroristic threatening for threats made to the murder victim. Defense counsel objected and requested a mistrial, contending that a curative instruction was insufficient. This court noted that even though there was no proof that Williams had been convicted of terroristic threatening, or that the nolle-prossed charges for terroristic threatening involved an incident with the victim, the State received the benefit of the prejudicial testimony. *Williams*, 2010 Ark. 89, at 7, 377 S.W.3d 168. We held that the statement was so prejudicial that it could not be cured by an admonition to the jury. *Id.*

To support our decision in *Williams*, this court cited four other cases as precedent, starting with *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996). In *Moore*, during cross-examination by defense counsel, a witness who testified that the defendant had confessed to killing the woman was asked if anyone else was present at the time of the confession. The witness answered, "No, but he admitted to killing another woman to his brother." *Moore*, 323 Ark. at 536, 915 S.W.2d at 288. This court held that the trial court's denial of the motion for mistrial was an abuse of discretion in the face of such a

**2.** During the bench conference, Jackson's counsel argued that the question was absolutely prejudicial and that there was no remedy but a mistrial. He then acknowledged that the law required that he move for an admoni-

tion. The trial court denied the motion for mistrial and, stated that Jackson was not waiving his request for a mistrial, and admonished the jury.

patently inflammatory and prejudicial statement. *Id.* at 537, 915 S.W.2d at 289.

The next case discussed in *Williams* was *Lackey v. State*, 283 Ark. 150, 671 S.W.2d 757 (1984), in which the State elicited testimony that the defendant, who was on trial for rape, had given marijuana to children. The defendant moved for a mistrial, but the trial court denied the motion and admonished the jury to disregard the testimony. This court reversed due to the irrelevant and prejudicial nature of the testimony, stating that the admonition was useless because the damage had already been done. *Lackey*, 283 Ark. at 153, 671 S.W.2d at 759.

This court in *Williams* next reviewed *Wingfield v. State*, 303 Ark. 291, 796 S.W.2d 574 (1990). In *Wingfield*, we held that the trial court abused its discretion in denying the defendant's motion for mistrial where, during direct examination by defense counsel, a law enforcement officer referenced a polygraph examination that he had given to another witness which was favorable to the prosecution. This court reversed, finding that the reference to the polygraph examination was an attempt by the police officer to bolster the veracity and credibility of a witness and, therefore, constituted prejudicial error. *Wingfield*, 303 Ark. at 297, 796 S.W.2d at 577.

The final case discussed in the *Williams* decision was *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006). In *Green*, the defendant was tried on four counts of capital murder and one count of kidnapping. At trial, a witness for the State testified that she was afraid for her brother, one of the murder victims, because her brother and her nephew had stolen some of the defendant's marijuana plants, and her nephew had died mysteriously after the theft. Upon reviewing the testimony, this court held that the statement was clearly prejudicial and alluded to the witness's belief that the defendant played a role in her nephew's murder and disappearance and that no admonition could have cured this statement. *Green*, 365 Ark. at 495, 231 S.W.3d at 652.

The answer at issue in this case does not approximate the prejudice occasioned by these cited cases. To reiterate, the actual question asked and the answer made in the instant case was as follows:

> PROSECUTOR: Did someone come to see you before court?
>
> WITNESS: Yes, ma'am.

There is nothing prejudicial on the face of the question or answer. From this exchange, there is no way the jury could ascertain who came to see the witness or for what reason. The testimony is simply not prejudicial on its face. Jackson properly objected, and the trial court warned the prosecutor, reminding her that the testimony was not admissible. Defense counsel argued that the trial court should instruct the jury to disregard the question.

It is axiomatic that a mistrial is an extreme and drastic remedy that should only be resorted to when there has been an error so prejudicial that justice could not be served by continuing the trial. *Wingfield*, 303 Ark. at 297, 796 S.W.2d at 577. The sound discretion of the trial court should not be disturbed unless an abuse of that discretion is shown. *Id.* Furthermore, a mistrial will be granted only where any possible prejudice cannot be removed by an admonition to the jury. *Puckett v. State*, 324 Ark. 81, 89, 918 S.W.2d 707, 712 (1996). We find no abuse of discretion and find that any nominal prejudice caused by the question and answer was cured by the admonition. We affirm the trial court on this point.

Jackson next asserts that the trial court erroneously excluded evidence that Cherick Coleman, a testifying co-defen-

dant, was arrested with a gun several weeks after the murder. Coleman was involved in the robbery in the instant case and was one of two witnesses who testified for the State about what occurred inside the home, the other being the surviving victim, Rogers. Prior to trial, defense counsel made a motion, requesting permission to impeach Coleman with his prior juvenile record and with a misdemeanor charge of gun possession that he received subsequent to the crimes at issue. In support of his motion to impeach, or alternatively to question Coleman about the gun-possession charge, defense counsel said:

> For the later issue I believe it's relevant because, in fact, there's a question of who's telling the truth, who's armed, you know, at the incident. This has some probative value that he's arrested later on with a gun when, in fact, he claimed, he claims in this case he was basically a decoy to get people in, but wasn't armed.
>
> . . .
>
> I anticipate Mr. Coleman's position is going to be that Mr. Madden and Mr. Jackson had the gun, and he was sitting there unarmed, and all he did was basically decoy and hang around. And if, in fact, he's arrested with a gun a couple of weeks later, that has some probative value with regard to his protestations of I'm not a violent person. I wasn't armed. It wasn't any of me.

The prosecutor responded that the gun was not relevant because the gun was tested and it was not the murder weapon. The trial court permitted Jackson to impeach Coleman using his juvenile conviction but withheld his decision regarding the firearm charge until he could hear Coleman's testimony.

During cross-examination of Coleman, the following exchange occurred:

> ATTORNEY: May I approach?

THE COURT: You may.

ATTORNEY: Your Honor, I would ask that, I would like to ask him about his familiarity with guns since he's purportedly identified here a gun and that may lead to the area of his subsequent arrest. And before I do that, I wanted to approach just to make sure that we were, that I didn't get into an area that you had forbidden.

PROSECUTOR: Objection, relevance.

THE COURT: What is the relevance of—

ATTORNEY: He's claimed. He is claiming that, you know, that he wasn't armed, that Michael gave him a gun. I want to, you know, get into what he knows about guns.

THE COURT: No.

ATTORNEY: Or what he knew about guns.

THE COURT: I'll let you proffer it during break.

After Coleman's testimony was concluded, the trial court permitted a proffer of his testimony regarding the misdemeanor gun-possession charge. During the proffer, Coleman admitted to defense counsel that he had a gun in his possession subsequent to this crime and stated that he could not remember what type or caliber the gun was other than the fact that it was a handgun. He added that he could not remember when or where he got the gun except that he found it, and he testified that the juvenile gun-possession case was thrown out and that he was never convicted of any charge stemming from the gun-possession arrest. After the proffer, the trial court said: "I haven't heard anything in this proffer to change my mind, so my ruling will be the same."

On appeal Jackson asserts that the gun-possession charge went to the credibility of Coleman's testimony that he was basically unarmed when he entered Rogers's home and that Jackson gave him a gun after

they entered. He further asserts that Coleman's testimony was crucial and because his later arrest with a gun is so at odds with the picture Coleman painted of himself, it was relevant and its inclusion surely would have altered the jury's analysis of Coleman's testimony. We conclude that there is no merit to this argument.

■ Arkansas Rule of Evidence 609(d) provides:

(d) Juvenile Adjudications. Evidence of juvenile adjudications is generally not admissible under this rule. Except as otherwise provided by statute, however, the court may in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

Ark. R. Evid. 609(d) (2009). It is clear from this rule that juvenile adjudications are generally not admissible. A trial court may in a criminal case, nonetheless, allow evidence of a juvenile adjudication of a witness other than the accused if the conviction meets two requirements. First, the conviction must attack the credibility of an adult and second, the court must be satisfied that the admission is necessary for a fair determination of the issue of guilt or innocence. Ark. R. Evid. 609(d). Rule 609(d) clearly allows the juvenile breaking-and-entering adjudication that Jackson was permitted to use for impeachment purposes. Rule 609(d) does not apply to the gun-possession charge, however, because there was no conviction or adjudication.

■ Jackson further argues that Arkansas Rule of Evidence 401 permits the introduction of the gun-possession charge because the charge is relevant evidence. Rule 401 defines relevant evidence as "evi-dence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401. No assertion was made in Jackson's trial that the crimes charged required some specific knowledge of guns that would make Coleman's general knowledge of guns relevant. Furthermore, Jackson did not assert at the trial level, and does not assert on appeal, that Coleman actually shot Bisbee or Rogers. Jackson's defense in the instant case was a general denial that he had anything to do with the crime. Whether Coleman later possessed a gun, unrelated to the crimes Jackson was accused of perpetrating, has little, if any, value considering Jackson's blanket denial of participation in the crime.

It appears that Jackson is essentially trying to use the gun-possession charge to show that Coleman is a person of bad character, which is not permitted under Rule 608. Rule 608 provides:

(b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Ark. R. Evid. 608. The gun-possession charge was intended by the defense to be a specific instance of conduct used for the purpose of attacking credibility. Yet, there was no conviction for this charge.

Furthermore, we conclude that the charge was not probative of truthfulness or untruthfulness.

Jackson contends that Rule 608 does not apply because Coleman did not deny the gun-possession charge, therefore, making the introduction of extrinsic evidence unnecessary. This argument overlooks the fact that the trial court has discretion to permit inquiry on cross-examination of specific instances of conduct only when the conduct concerns the witness's character for truthfulness. In similar instances this court has held that the trial court did not err in refusing to permit cross-examination on accusations of crimes for which the witness was not convicted. *See Richmond v. State*, 302 Ark. 498, 791 S.W.2d 691 (1990) (witness's arrest for carrying pistol into courtroom was not probative of whether witness was truthful, and thus trial court properly precluded defendant from cross-examining witness as to arrest); *Watkins v. State*, 320 Ark. 163, 895 S.W.2d 532 (1995) (defendant was not entitled to cross-examine prosecution witness on witness's theft of gun, to attack witness's credibility; there was no proof in record that witness had been convicted of offense entailing one year or more imprisonment or involving dishonesty or false statement, and whether witness had previously stolen gun was not probative of truthfulness); and *Ellison v. State*, 354 Ark. 340, 123 S.W.3d 874 (2003) (refusal in murder prosecution to permit cross-examination of state witness for impeachment purposes concerning incident in which witness allegedly broke into defendant's house and stole some of his property was not error, where witness had never been convicted of a felony in conjunction with purported break-in).

This court has, of course, interpreted Rule 608 to permit inquiries into conduct on cross-examination that is clearly proba-tive of truthfulness or untruthfulness. *See, e.g., Bailey v. State*, 334 Ark. 43, 56, 972 S.W.2d 239, 246 (1998). Specifically, this court has adopted a three-part test for admissibility: (1) the question must be asked in good faith; (2) the probative value must outweigh its prejudicial effect; and (3) the prior conduct must relate to the witness's truthfulness. *Id.* This test must be considered along with our settled law that evidentiary matters regarding the admissibility of evidence are left to the sound discretion of the trial court and rulings in this regard will not be reversed absent an abuse of discretion. *Id.* We agree with the trial court that the evidence of subsequent gun possession by Coleman was not relevant to the charges against Jackson and, furthermore, it constituted an inquiry into a specific instance of conduct that is not permitted under Rule 608 because the fact of later gun possession by Coleman did not relate to the witness's veracity. What Coleman did with a gun at a later time is too detached from the facts of the instant case to have a bearing on credibility.

Jackson's final point on appeal is similar to the previous point regarding the exclusion of certain evidence. In a pretrial proceeding, the State moved to exclude testimony that a substance which appeared to be marijuana belonging to the victims was found in the home. Jackson maintains that the jury was entitled to know all of the facts about the crime scene. He urges, in addition, that the jury would have viewed the case differently if it had known that illegal drugs were inside the house.

During a pretrial hearing, the trial court instructed Jackson and the prosecutor not to mention marijuana in opening statements and to approach the bench before questioning a witness about it. During cross-examination of Rogers, Jackson's de-

fense counsel asked to approach, and the following colloquy occurred:

ATTORNEY: I want to ask about the marijuana, whether he's aware that there was marijuana in the house. . . .

PROSECUTOR: And I would object as the only, the only reason Mr. Rosenzweig would ask this would be to cast bad character on the Defendant (sic),[3] and there is no relevance to it. And obviously with a general denial defense it would not be relevant.

ATTORNEY: Well, he said—Well, I mean, it is correct that my client says he was not there. That is the position we are taking. Nonetheless, the State's theory is there was some thinking that it was a drug house so I think it's relevant to that.

PROSECUTOR: I never said it was a drug house.

ATTORNEY: I think Cherick Coleman's going to say that. He may.

THE COURT: You can re-call him if something else comes up, but I haven't seen anything that makes it relevant.

On cross-examination, Coleman admitted to purchasing marijuana with the money he received from the robbery. But neither the prosecutor nor Jackson asked Coleman why this particular house was targeted. Coleman never testified to any knowledge or suspicion that the victims' home contained marijuana or other illegal drugs. No other witnesses testified that the house was known as a drug house, and the State made no such allegation in opening or closing argument. Moreover, during the proffer, Rogers denied knowledge of any marijuana in his home or of any drugs being sold from his home.

While Jackson is correct that the marijuana could be viewed as a historical fact, and not an issue of character, he overlooks the requirement that the evidence must be relevant to be admissible. Ark. R. Evid. 402. The mere fact that an item that may have been marijuana was present at a crime scene does not make it relevant. The cases cited by Jackson on this point are inapposite as they deal with situations where the evidence provided a context for the crime. For example, Jackson cites this court to *Thomas v. State*, 273 Ark. 50, 615 S.W.2d 361 (1981), where this court held that all of the circumstances of a particular crime may be shown, even if those circumstances would constitute a separate crime. In *Thomas*, however, the issue was, "[c]an the State offer evidence of criminal conduct by an accused during the commission of a crime, when such conduct is not an element of the crime for which the accused is being tried?" *Id.* at 52, 615 S.W.2d at 361. We held that the State could do so because the sequence of events was inseparable. Here, to the contrary, nothing about the presence of a possible bag of marijuana at the crime scene makes any fact of consequence in this case more or less probable or provides the jury with any context to assist in understanding the crimes. The trial court did not abuse its discretion in refusing to admit it.

The record in this case has been reviewed in accordance with Arkansas Supreme Court Rule 4–3(i), and no reversible error has been found.

Affirmed.

---

3. The reference is clearly to the victims.