Cite as 2023 Ark. App. 318

# ARKANSAS COURT OF APPEALS

DIVISIONS I, II & IV
No. CR-22-452

| | |
|---|---|
| RHYS FRANKLIN | **Opinion Delivered** May 31, 2023 |
| APPELLANT | APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT [NO. 64CR-21-75] |
| V. | |
| STATE OF ARKANSAS | HONORABLE JERRY DON RAMEY, JUDGE |
| APPELLEE | |
| | REVERSED AND REMANDED |

## BART F. VIRDEN, Judge

A Scott County jury convicted appellant Rhys Franklin of driving while intoxicated (DWI) and refusal to submit to a chemical test. Franklin contends that the trial court committed reversible error when it denied his two separate motions for a mistrial. We agree that a mistrial should have been granted; therefore, we reverse and remand.

### I. *Background*

On the night of November 17, 2020, Scott County Deputy Sheriff James Oswald responded to a report of a person "passed out" in a vehicle that was parked on Brush Creek Road near Parks, Arkansas. Deputy Oswald found Franklin sound asleep in the driver's seat. The vehicle's headlights were on, and its engine was still running. Deputy Oswald tried to wake the sleeping driver, but Franklin was unresponsive, so the deputy reached through the open window and turned off the vehicle's ignition. When he did, Franklin began to stir. Deputy Oswald testified that Franklin's eyes were "red and watery, pretty bloodshot," his

breath smelled of intoxicants, his speech was slurred, and he was "wobbly" when he got out of the vehicle. Franklin admitted having drunk "several beers" at deer camp earlier that day. Deputy Oswald asked Franklin to submit to a field-sobriety test, but Franklin said, "I'm just not doing that." Deputy Oswald told Franklin that he was arresting him on suspicion of DWI and placed him in the back of the patrol vehicle. Incident to the arrest, Deputy Oswald searched Franklin's vehicle and found an empty beer can on the passenger's side floorboard, a thirty-pack case of beer that had been opened, and more cans of beer in an ice chest. At the detention center, Deputy Oswald asked Franklin to submit to a chemical test, but he refused. Deputy Oswald then issued citations to Franklin for DWI and refusal to submit.

At the jury trial, Deputy Oswald testified as to why he believed Franklin was intoxicated, which included the deputy's observations at the scene set forth above, followed by Franklin's refusal to take any field-sobriety tests or to take a chemical test offered at the detention center. During what could be described as a vigorous cross-examination, defense counsel asked Deputy Oswald the following questions:

> What I'm wondering about, how do we go from a suspicion to a firm conviction that caused you to write the ticket, because [Franklin] didn't take the test? . . . Now, what happened at the station that changed your suspicion to a firm conviction, enough that you wrote him a citation for DWI?

Deputy Oswald said, "I mean, it's not admissible, but [the portable breath test] was .17." At a bench conference, defense counsel moved for a mistrial, stating that the utterance was "strictly voluntary" on Deputy Oswald's part, that no question had been asked to prompt him to refer to the portable breath test (PBT) result "other than a defensive mechanism on his part," that the PBT had been administered long before the chemical test was offered at the detention center, and that the point of his line of questioning was simply

2

how the deputy's opinion on intoxication had gone "from suspicion to conviction." The State responded that defense counsel had "opened the door" by repeatedly asking Deputy Oswald about the indications of intoxication. Defense counsel conceded that Deputy Oswald's suspicion had been based on the PBT and other factors, but he said that his question pertained to what happened afterwards that made him certain enough of Franklin's intoxication to issue the citation. The trial court denied the motion for mistrial, stating that after considering the totality of the cross-examination, Deputy Oswald had been responding to a question asked by defense counsel. Although the trial court offered to give the jury a cautionary instruction to disregard the deputy's testimony about the PBT result, defense counsel declined, stating that a cautionary instruction to ignore the testimony would only serve to emphasize it.

The State then called Omar Gonzales, an employee with the City of Waldron, who had been called to assist the sheriff's office in responding to the parked vehicle on Brush Creek Road. Gonzales was asked what happened at the scene, and he said, "When I arrived Deputy Oswald advised me of what was going on. He had Mr. Franklin in the back of the truck. And he asked me if I could administer a PBT, which I did."

Another bench conference convened, and the prosecutor advised the trial court that he had told both witnesses not to "get into that," meaning the PBT. The trial court remarked that the PBT was already before the jury, so "that's not an issue." Defense counsel again moved for a mistrial and explained that a cautionary instruction would only draw attention to the inadmissible testimony. Defense counsel's motion for a mistrial was denied,

3

and the trial resumed. Before retiring to deliberate, the trial court read to the jury the following instruction:

> Rhys Franklin is charged with the offense of Driving While Intoxicated. To sustain this charge the State must prove, beyond a reasonable doubt that Rhys Franklin, while intoxicated, operated or was in actual physical control of a motor vehicle. Or, operated or was in actual physical control of a motor vehicle *while the alcohol concentration in his breath or blood was one-eighth of one percent (.08%) or more by weight of alcohol in his blood as determined by a chemical test of his blood, urine, or breath*.

(Emphasis added.)

The jury found Franklin guilty of DWI and refusal to submit to a chemical test. Franklin has now appealed to this court.

## II. *Standard of Review*

A mistrial is an extreme and drastic remedy to be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *McDaniel v. State*, 2019 Ark. 56, 567 S.W.3d 847. The grant or denial of a motion for mistrial lies within the sound discretion of the trial court, and the exercise of that discretion should not be disturbed on appeal unless an abuse of discretion or manifest prejudice to the complaining party is shown. *Id*. We consider factors such as whether the prejudicial response was deliberately induced and whether an admonition to the jury could have cured any resulting prejudice. *McClinton v. State*, 2015 Ark. 245, 464 S.W.3d 913. An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *McClendon v. State*, 2019 Ark. 88, 570 S.W.3d 450. There are instances, however, where a statement is so prejudicial that an admonishment could never cure the prejudicial effect. *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006).

4

III. *Discussion*

This case requires us to examine the prejudicial effect of inadmissible evidence being revealed to the jury by the State's witnesses. It is well settled that the results of a PBT are not admissible to prove a person is guilty of driving while intoxicated. *See Elser v. State*, 353 Ark. 143, 114 S.W.3d 168 (2003). The prosecutor told the trial court that he had instructed the State's witnesses not to mention the PBT; yet not just one, but two of them did just that.

On direct examination by the prosecutor, Deputy Oswald testified about his actions at the scene, and he said, "I then told [Franklin] that I was going to arrest him for suspicion of DWI[,] and I took him to the side of my vehicle on the passenger side and checked him and made sure—I did not handcuff him, and I placed him in the back of my unit." On cross-examination, defense counsel asked Deputy Oswald what had happened when Franklin was taken to the detention center, i.e., after the encounter at the scene—and after the PBT had been administered, which was subsequently revealed by the testimony of Gonzales—that changed the deputy's opinion that Franklin was intoxicated from a mere suspicion to a firm conviction. That is when Deputy Oswald informed the jury that Franklin's PBT registered 0.17 percent. The deputy even acknowledged that he was aware that the result was inadmissible.

We disagree with the State's position that defense counsel basically invited the error by "opening the door" to the inadmissible testimony because the deputy's answer was not responsive to defense counsel's question, which was essentially whether something had occurred on the ride to or at the detention center. The State relies on *Buckley v. State*, 2014

5

Ark. App. 516, 443 S.W.3d 559, but that case is readily distinguishable. This court affirmed Buckley's conviction for DWI and held that the trial court did not err in allowing an officer to testify about a PBT because it was relevant to defense counsel's question and did not result in prejudice because defense counsel had opened the door by asking on cross-examination whether the "HGN" was the only test administered to Buckley. In *Buckley*, we do not know whether the actual results of the PBT were revealed, and unlike here, the testimony in *Buckley* was in response to defense counsel's specific question about tests. In this case, even a contentious cross-examination does not give a witness license to reveal inadmissible PBT results, especially when that witness had been warned about it before he testified and when, as here, the witness even acknowledged the inadmissibility of what he nonetheless revealed to the jury.

Although the State contends that defense counsel's decision to decline the trial court's offer of a cautionary instruction waived any error, we do not agree. While an admonition to the jury may in certain circumstances cure a prejudicial statement, *Zachary v. State*, 358 Ark. 174, 188 S.W.3d 917 (2004), it could not unring the bell that had been rung here. The damage was already done. Moreover, after Deputy Oswald had revealed the PBT results to the jury, that prejudicial testimony was compounded by Gonzales's subsequent mention of the PBT, bringing the PBT results to the jury's attention once again. Neither reference to the PBT was inadvertent, and defense counsel's strategic decision to not have the jury cautioned does not preclude our review of the error.

Finally, we cannot agree that the error was harmless. A dissent to this opinion relies, in part, on *Massengale v. State*, 319 Ark. 743, 894 S.W.2d 594 (1995), for the proposition

that admission of the PBT results was harmless error. The facts of *Massengale* actually highlight why a mistrial should have been granted in the case at bar. In *Massengale*, the testimony was that the PBT was given to the defendant and produced "unacceptable results." That is a significant distinction from testimony in this case that the results were 0.17.

While we may not disagree that the evidence was sufficient to have convicted Franklin of DWI notwithstanding the inadmissible PBT results, we cannot agree that the error here was slight. After having heard that Franklin registered 0.17 percent on the PBT, the trial court instructed the jury that Franklin could be found guilty if he operated or was in actual physical control of a motor vehicle while he was intoxicated or *while the alcohol concentration in his breath or blood was one-eighth of one percent (.08%) or more by weight of alcohol in his blood as determined by a chemical test of his blood, urine, or breath*. Similarly, in *White v. State*, 73 Ark. App. 264, 42 S.W.3d 584 (2001), we held that the trial court erred in admitting a trooper's testimony that White had failed a breathalyzer when White had not been permitted to cross-examine the people responsible for calibrating and certifying the machine. We said that the error was not harmless even though the trooper's testimony that White smelled of alcohol and failed field-sobriety tests would have been sufficient to convict him without the jury considering the breathalyzer result because the jury had been instructed that White could be convicted of DWI if the jury found that he operated a vehicle while intoxicated *or* while there was 0.10 percent or more by weight of alcohol in his system.

We cannot imagine a more "patently inflammatory" statement in a DWI trial than one in which a member of law enforcement has testified that the defendant registered over

the legal limit on a PBT and when the jury has been specifically instructed that the defendant is guilty if his blood alcohol was 0.08 percent or more. The testimony by Deputy Oswald that Franklin had registered 0.17 percent on the PBT, followed by Gonzales's reference to the PBT, determined the outcome here—the jury predictably found Franklin guilty of DWI. A mistrial was warranted, and a cautionary instruction to the jury would have been useless after hearing such prejudicial testimony.

Reversed and remanded.[1]

THYER, WOOD, HIXSON, and MURPHY, JJ., agree.

HARRISON, C.J., and GLADWIN, KLAPPENBACH, and BROWN, JJ., dissent.

**BRANDON J. HARRISON, Chief Judge, dissenting**. I respectfully dissent from the majority opinion because it doesn't jibe with Arkansas Supreme Court precedent that has both (1) permitted a "harmless error" analysis when PBT (portable breath test)-related evidence was wrongly admitted in a DWI trial and (2) found that error to be harmless given other indicia of intoxication introduced into the record.

---

[1]Inasmuch as we are reversing and remanding as to Franklin's DWI conviction, we also reverse and remand the conviction for refusal to submit. *See Williams v. State*, 2010 Ark. 89, 377 S.W.3d 168 (holding that the trial court abused its discretion in not declaring a mistrial as to all convictions—capital murder, kidnapping, first-degree domestic battering, endangering the welfare of a minor, and felon in possession of a firearm—when a prosecution witness falsely testified that Williams had previously been convicted of terroristic threatening involving the murder victim); *Wingfield v. State*, 303 Ark. 291, 796 S.W.2d 574 (1990) (holding that the trial court abused its discretion in denying a mistrial motion in a trial for first-degree murder and felon in possession of a firearm when a law enforcement officer, on direct examination by defense counsel, referred to a polygraph examination he had given to another witness because it was an attempt to bolster the credibility of that witness).

Applying a harmless-error analysis, Franklin's conviction should be affirmed because it's sufficiently supported by evidence apart from the PBT point. I don't in principle disagree with the majority's decision to recognize a bright-line rule that admitting a PBT result is reversible error as a matter of law so that no harmless-error analysis need even be made to see if a conviction could be scrubbed of the taint. That direct rule can be easily applied in the trial and appellate courts, in almost every case in which the issue might predictably arise. But such a per se rule runs contrary to our supreme court's current view—although I grant the harmless-error rule in DWI cases isn't deeply developed by either appellate court. Still, we must give the harmless-error analysis a chance, so to speak, until the supreme court holds that a new trial is always required when (1) PBT evidence is wrongly made known to the jury, and (2) a motion for mistrial has been properly made.

Now, to that supreme court precedent. In *Massengale v. State*, 319 Ark. 743, 894 S.W.2d 594 (1995), the defendant moved in limine to exclude evidence about portable breathalyzer tests administered before he was arrested for DWI. The argument was portable breathalyzer tests were not approved as Ark. Code Ann. § 5-65-206(c) required for admission as evidence of intoxication, and mentioning the PBT was more prejudicial than probative. *Id*. at 745, 894 S.W.2d at 595. When the prosecution asked about the PBT during the trial, Massengale objected again. *Id*. Some evidence about the PBT came in. *Id*. at 746, 894 S.W.2d at 596. The supreme court agreed the mention of the PBT was erroneous because breathalyzer tests were not certified by the Department of Health. Consequently, "the ruling of the trial court admitting the evidence of the portable

9

breathalyzer test was erroneous. However, *the error was harmless*." *Id*. at 747, 894 S.W.2d at 596 (emphasis added).

The error was harmless given the non-PBT evidence of intoxication in the record. That is the case here.

In a now ironic choice, the *Massengale* court cited this court's precedent to support its holding that admitting PBT evidence was harmless error given the whole record. In *Tallant v. State*, the defendant was convicted of negligent homicide resulting from driving while intoxicated after the circuit court admitted results of blood-alcohol tests on blood samples the defendant contended were not taken in accordance with health department guidelines. 42 Ark. App. 150, 152, 856 S.W.2d 24, 25 (1993). The supreme court wrote, as it relied on *Tallant* as persuasive authority, that "[w]ithout definitively holding error was committed," we had "declared that any error in the admission of the tests was harmless, as [Tallant] admitted that he had been drinking, smelled like alcohol, exhibited altered behavior, and had fourteen or fifteen beer cans and an ice chest in his car." *Massengale*, 319 Ark. at 748, 894 S.W.2d at 596. So in *Tallant*—as read by our supreme court no less—we reached the opposite decision (in principle) than we did in *White v. State*, 72 Ark. App. 264, 42 S.W.3d 584 (2001), which the majority cites today. And *Tallant* runs opposite from the majority's decision today. Why? Because *Tallant* stands for the proposition that, if there is sufficient evidence of intoxication apart from the challenged items, then even a wrongly admitted chemical-test result can be a harmless error on the record.

10

To sum it up, we applied a harmless-error test in *Tallant*[1] and affirmed a conviction on the other evidence received. A couple of years later, the supreme court in *Massengale* took the same path. I see no reason to deviate from those prior cases, unless the supreme court imposes a bright-line rule stating that wrongly admitted PBT evidence is reversible error as a matter of law when a motion for mistrial has been properly made. Because I don't believe that is the law now—and given there is ample unchallenged evidence in the record to support Franklin's conviction—I would affirm the judgment under a harmless-error analysis.

BROWN, J., joins.

**N. MARK KLAPPENBACH, Judge, dissenting**. I dissent from the majority's decision to reverse Franklin's convictions for driving while intoxicated and for refusal to submit to a chemical test. I cannot say that the circuit court abused its considerable discretion in denying his motions for the extreme remedy of mistrial. Importantly, defense counsel opened the door to the objectionable testimony; he refused the offer of curative instructions; and defense counsel's strategy, as explained in his opening statement and closing argument, was to focus on whether Franklin was in physical control of the vehicle, not whether the State proved that he was intoxicated.

---

[1]*Tallant* (1993) preceded *White* (2001) by eight years, but *White* did not directly question, much less overrule, *Tallant*. Nor has *White* had any subsequent influence in this area of the law, until today, if you walk its citation trail.

Franklin exhibited ample physical indicators of intoxication when he was found passed out behind the wheel of his vehicle.[1] Those indicators supported law enforcement's decision to detain Franklin and issue him a citation for DWI, regardless of any information about a portable breath test. Defense counsel had the first officer, Oswald, reconfirm Franklin's outward signs of intoxication, confirm that Franklin had refused field-sobriety tests and the chemical testing, and confirm that he (the officer) did not hold the refusal against Franklin. Then came the following defense question:

> What I'm wondering about, how do we go from a suspicion to a firm conviction that caused you to write the ticket, because [Franklin] didn't take the test? . . . Now, what happened at the station that changed your suspicion to a firm conviction, enough that you wrote him a citation for DWI? That is a simple question, son.

Officer Oswald responded, "I mean, it's not admissible, but it was .17 the PBT." Defense counsel "opened the door" by relentlessly asking the first officer what supported his decision to issue the DWI citation, noting that there was nothing on the refusal-to-submit form that included refusal of a breath test. Franklin's appellate counsel acknowledges that "[t]here may be valid argument that the defense counsel opened the door" as to the first officer's testimony, and I agree. Defense counsel is duty-bound to vigorously defend his or her client, but it is unfair for defense counsel to bait a witness into revealing improper evidence and then assert error requiring a new trial.

---

[1] The multiple indicators of intoxication were his inability to awaken, his irrational responses to being asked his name by twice answering "Mom," his admission that he had consumed several beers that day, the presence of open and unopened beer cans in plain view, the smell of intoxicants coming from his breath, his bloodshot and watery eyes, and his inability to stand or walk without assistance from the law-enforcement officer.

Moreover, the problem in this case could have been alleviated by an immediate curative instruction to the jury or by subsequently refusing to instruct the jury that DWI can be committed by one in control of a vehicle while having a BAC of .08 or more. However, defense counsel refused the offer of a curative instruction and never objected to inclusion of a BAC result in the guilt-phase jury instructions defining the offense of DWI. Notably, there was no testimony before the jury explaining the acronym "PBT" or the number ".17." Additionally, the second officer's statement that he administered the "PBT" was spontaneous, not brought on by the prosecutor, and no test result was mentioned.

A mistrial is an extreme and drastic remedy reserved only for when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *Jones v. State*, 2019 Ark. App. 345, 582 S.W.3d 847. The decision to grant a mistrial is within the sound discretion of the circuit court and will not be reversed absent a showing of abuse or manifest prejudice to the appellant. *Id*. We consider factors such as whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice. *Id*. An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *McClendon v. State*, 2019 Ark. 88, 570 S.W.3d 450. The supreme court has found no abuse of discretion in denying a mistrial where the possible prejudice could have been cured by an admonition by the circuit court and defense counsel refused the offer of such a curative instruction. *Ferguson v. State*, 343 Ark. 159, 177, 33 S.W.3d 115, 126 (2000).

13

It is apparent that the prosecutor and defense counsel were aware that the PBT was not admissible as substantive evidence of guilt of DWI. The prosecutor confirmed that he had told the State's witnesses "not to get into that." Even so, a PBT *may* provide evidence to support the reason for *arrest*, and *that* was the question that defense counsel posed to Officer Oswald. *See Buckley v. State*, 2014 Ark. App. 516, 443 S.W.3d 559; *Gazaway v. State*, 2010 Ark. App. 776.[2] I cannot agree that the extreme remedy of mistrial was warranted in this instance.

GLADWIN, J., joins.

*Ernie Witt*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.

---

[2]This fact, together with (1) the fact that reasonable cause for a DWI arrest is an *element* of the offense of refusal to submit, Ark. Code Ann. § 5-65-202(a)(3) (Supp. 2021); (2) the existence of overwhelming proof of appellant's violation of the refusal-to-submit statute; and (3) appellant's failure to separately address any impact of the testimony in question on refusal to submit, makes the majority's reversal of the conviction for that particular offense all the more remarkable.